Taft, Circuit Judge,
(after stating the facts.) We think the motion to direct a verdict for defendant should have been granted, and for two reasons: First, because the engineer, who, it is claimed, caused the accident by his negligence, was a fellow servant of the plaintiff below; and, second, because the negligence of the plaintiff contributed to cause the injury of which he complains.
First. The principle that among the risks incident 'to the business of the master which the servant, by” his implied contract of service, assumes, are those arising from the negligence of his fellow servants, provided they have been selected with due prudence and care, was first satisfactorily expounded in the leading case of Farwell v. Railroad Co., 4 Metc. (Mass.l 49, by Chief Justice Shaw. It has been fully recognized and followed by the supreme court of the United States. In Randall v. Railroad Co., 109 U. S. 478 , 3 Sup. Ct. Rep. 322, it was held that the defendant railroad company was not responsible to a brakeman in its employ, who, while switching his own engine and train, was struck by another engine of the defendant, negligently operated by its engineer, because the brakeman and the engineer were fellow servants, working together at the same time and place, in pursuance of a common object, to wit, the moving of trains. An exception to the general rule was first suggested, perhaps, by the decision of the case of Stevens v. Railroad Co., 20 Ohio, 415, and afterwards fully confirmed in the case of Railroad Co. v. Keary, 3 Ohio St. 201. This exception has been recognized by the supreme court of the United States in the case of Railroad Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. Rep. 184, where it was held that, when an engineer’s injury resulted from the negligence of the conductor of his train, the negligent conductor was the representative of the company, and his negligence was its negligence. The counsel for the defendant in error rely on the exception announced in the Ross Case to take the case at bar out of the general rule.
It was decided by this court at the last term, in the case of Railroad Co. v. Andrews, 50 Fed. Rep. 728, 1 C. C. A. 636, that the mere fact that the negligent employe was of a higher grade than the injured servant did not prevent their being fellow servants, within the general rule, unless it also appeared that the injured servant was actually subject to the orders of the negligent employe when the accident happened. It was accordingly held that a brakeman on one train, who was *365 killed by the negligence of a conductor of a colliding train, was a fellow servant of such conductor, and that the brakeman’s representatives had thérefore no cause of action against the railroad company. It was held that the facts brought the case within the Randall Case, rather than the Ross Case, and that it was error in the court below to direct a verdict for the plaintiff. We see no reason to question the correctness of the conclusion or the reasoning of the court in the Andrews Case, and it remains only to apply them to the case at bar.
The breaking of the train, under the rules of the company, made the engineer the pro tempore conductor of that part which still remained attached to the engine, and required the trainmen to act accordingly. With reference to the fireman, McGuire, and the head brakeman, Mann, therefore, the engineer was a superior officer, entitled to their obedience; and if, while the train was in two parts, the engineer’s negligence had caused injury to either of them, he would have had his action against the company under the doctrine of the Ross Case, already referred to. But the. plaintiff here was in the rear portion of the train, and subject to the order of the conductor, Hughes. In obedience to Hughes’ order, he went forward to signal the returning engine, and when the accident happened, he should have been discharging a duty assigned him by Hughes. Howe was not then acting under, nor was he subject to, the engineer’s orders. The case is exactly like the Andrews Case, where the brakeman of one train was injured by the negligence of the conductor of another. Howe and the engineer were fellow servants, and the company is not liable to Howe, therefore, for the engineer’s negligence.
It is suggested that, as the accident occurred in Kentucky, the decisions of the court of appeals of Kentucky should be controlling. It is held by that court that a brakeman and' an engineer are not fellow servants, so as to prevent liability of the company to the brakeman for the negligence of the engineer. Railroad Co. v. Brook’s Adm’r, 83 Ky. 131; Railroad Co. v. Moore, Id. 677. Were the question one of local law or usage, the decision of which had become a rule of property in the state, it would be our duty to regard the judgments, of the Kentucky court of appeals as authoritative and final. But the question who are fellow servants, within the rule under consideration, is one of the interpretation and construction of a general contract of service according to the common law of Kentucky. It is a question of general jurisprudence, and is not local. A decision upon it could not, in its nature, have become a rule of property. "Upon questions of the general common law of a state, the courts of the United States, exercising a jurisdiction concurrent with that of the state courts, are vested with the constitutional power of rendering and enforcing their independent judgment as to what the law is, even if this judgment is not in accord with the conclusions of the ultimate tribunal of the state whose law they are administering. The supreme court of the United States,, speaking by Mr. Justice Story, laid down the principle in the case of *366 Swift v. Tyson, 16 Pet. 1, 18, 19, and at nearly every term since, that court has had occasion to reassert it. Many of the authorities are collated in the opinion of Mr. Justice Bradley in the case of Burgess v. Seligman, 107 U. S. 20, 34, 2 Sup. Ct. Rep. 10. Mr. Justice Matthews, in discussing the subject in Smith v. Alabama, 124 U. S. 465, 8 Sup. Ct. Rep. 564, said at page 478, 124 U. S., and page 569, 8 Sup. Ct. Rep.:
“There is no common law of the United States in the sense of a national customary law, distinct from the common law of England as adopted by the several states, each for itself, applied as its local law, and subject to such alteration as may be provided by its own statutes. Wheaton v. Peters, 8 Pet. 591. A determination in a given case of what that law is may be different in a court of the United States from that which prevails in the judicial tribunals of a particular state. This arises from the circumstance that the courts of the United States, in cases within their jurisdiction, where they are called upon to administer the law of the state in which they sit, or by which the transaction is governed, exercise an independent, though concurrent, jurisdiction, and are required to ascertain and declare the law according to their own judgment. This is illustrated by the case of Railroad Co. v.Lockwood, 17 Wall. 357, where the common law prevailing in the state of New York in reference to the liability of common carriers for negligence received a different interpretation from that placed upon it by the judicial tribunals of the state; but the law as applied was none the less the law of the state.”
The question who are fellow servants within the general rule would seem to be not less a question of general common law than the question whether public policy forbids a common carrier from stipulating against liability for his own negligence,—the point involved in Railroad Co. v. Lockwood, referred to by Mr. Justice Matthews. In Bucher v. Cheshire Railroad Co., 125 U. S. 555, 8 Sup. Ct. Rep. 974, a statute punishing any one traveling on Sunday, by a fine of $10 was held to afford a good defense to an action by one who, while traveling in violation of the statute, was injured by the negligence of the defendant railroad •company, on the ground that a long line of decisions by the supreme judicial court of Massachusetts sustaining the defense made this the local law, binding on the federal courts. But there the state statute gave the question at issue a local color, which is not present in the case at bar. In Randall v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. Rep. 322, the court declined to weigh the conflicting views of the various state courts upon the limitations of the fellow-servant rule, but decided it as one of general jurisprudence. The same is true of the decision of this court in the case of Railroad Co. v. Andrews, supra.
In Hough v. Railroad Co., 100 U. S. 213, the question was whether the defendant company could escape liability, under the fellow-servant rule, for an injury received in Texas, and Mr. Justice Harlan spoke for the supreme court, with reference to the effect of state decisions upon the subject, as follows:
“Our attention has been called to two cases determined in the supreme court of Texas, and which, it is urged, sustain the principles announced in the court below. After a careful consideration of those cases, we are of opinion that they do not necessarily conflict with the conclusions we have reached. Be *367 this as it may, the questions before us, in the absence of statutory regulations by the state in which the cause of action arose, depend upon principles of general law, and in their determination we are not required to follow the decisions of the state courts. ”
The decision in the Randall Case and the subsequent one in the case of Railway Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. Rep. 184, must, then, control United States courts in considering similar cases in states where the question is one of common law, and is not controlled by statute. There is no statute in Kentucky which affects the subject. We are bound, therefore, to hold that by the common law of that state, under the circumstances as admitted by the plaintiff below, he and the engineer, Kirsch, were fellow servants, and that the company was not liable for an injury to him caused by Kirsch’s negligence.
Second. We are of the opinion that, on the evidence adduced, it was the duty of the court below to have directed a verdict for the defendant on the ground of the plaintiff’s contributory negligence. In order that a defendant shall be exonerated from liability by the plaintiff’s negligence, it must appear that it was the proximate cause of the accident. It need not be the sole proximate cause. It is enough if it concurs with the defendant’s negligence to produce the injury. Plaintiff admits that, with the knowledge that an engine was approaching, on a very dark night, he lay down with his arm over the rail and went to sleep. Grosser negligence, more certain to result in injury, can hardly be suggested. It is charged that the engineer was negligent in not sending out before him his brakeman, in not signaling his return by whistling as often as he should, and in running at a higher speed than four miles an hour,— all, contrary to the rules of the company. There was evidence tending to show such negligence, but it all was plainly concurrent with that of the plaintiff, and therefore constitutes no ground for recovery. The counsel for the plaintiff below rely, however, on the conduct of the engineer at the time of the accident in failing to stop the engine before Howe was run over, as bringing the case within the so-called exception to the general rule of contributory negligence, according to which plaintiff’s negligence is no defense, if it appears that by the exercise of due care the defendant might have avoided the consequences of plaintiff’s negligence. The exception obviously refers only to those cases where the negligence of the plaintiff is not a proximate cause of his injury, because, after the fact of plaintiff’s negligence, and with that as a circumstance or condition of the situation, defendant might then by exerercise of due care avoid the injury. In such cases, defendant’s negligence in the chain of causes leading to the accident intervenes between plaintiff’s negligence and the injury, and is, in law, the sole proximate cause.
Was there any substantial evidence which the court might have submitted to the jury for the application of this principle? It does not appear from the evidence of any witness that the engineer saw Howe upon the track until he received from Mann the “steady” signal to stop. McGuire, the fireman, testified that on account of the tender’s obstructing *368 his view, the engineer could not have seen Howe upon the track unless he had looked out of the cab window, and that he did not do that. The engineer testified that he did not see Howe until he was signaled to stop, and Mann testified to nothing from which the contrary can be inferred. Mann, the witness upon whose evidence the plaintiff’s case chiefly rests, admitted On the stand that, after he gave the signal to stop, the engineer did all that could be done to stop the engine. It follows that there was no evidence to show any want of care on the engineer’s part after he became aware of the peril to which Howe had exposed himself. The theory of counsel for the plaintiff below is that, when Mann saw the reflection of Howe’s light, and called to the engineer, “Look out! there they are,” this was notice to the engineer of Howe’s perilous situation. We cannot agree with this view. Mann testified that he meant by this remark to indicate to the engineer that they were approaching the rear portion of the train, and the evidence of the engineer is that he so understood it. Mann stated that when he first saw the light the engine was between 100 and 200 feet from it; that, after calling to the engineer, he looked again, and saw in the darkness an object which he supposed to be the form of a brakeman waiting to get on the engine. It was not until he crossed the gangway of the engine,' and the object was not more than 15 feet away, that he saw it was a prostrate man. Now there was nothing in what Mann said to lead the engineer to think that anybody was in danger of being run over. Mann did not think so. Why should the engineer have thought so? The peril which the engineer failed to use due care to avoid, as charged by the plaintiff, was that of running over a sleeping man. Neither the nearness of the other part of the train nor the flash of a light would or could suggest the possibility’of such a peril to’the engineer, and he had no other facts upon which to exercise his reasoning faculties. It would seem, therefore, that there was no evidence tending to show a want of due care on the part of the engineer in stopping the engine after he became aware of any fact or facts from which he could reasonably infer Howe’s peril.
Upon the point, however, whether, if the engineer had looked out, he could have seen Howe’s perilous position in time to stop the engine before striking him, the evidence is conflicting, and, if the point is material to the case, it should have been submitted to the jury. It remains to inquire, therefore, whether a failure of the engineer to see Howe on the track in time to avoid the accident, when by looking out he might have seen him, can be said to be a legal cause of the accident. If so, it is the sole proximate cause, and would render the company liable. When a man lies down to sleep upon a railroad track at night, with full knowledge that a train is soon to pass that way, does he thereby impose upon the engineer the duty with respect to him of keeping a lookout, and of discovering him upon the track ? It is true that the engineer owes it to the passengers on the train, and to persons lawfully upon the track, to keep a lookout, in order to prevent injury to them. But that is because danger to such persons is probable, and should be looked for, to be avoided. One is bound to use one’s own so as not *369 to injure another. This duty, of course, is commensurate with the reasonable probability that any particular use of one’s own- will injure another. Now there is no probability that a man will be asleep upon the railroad track. While, therefore, an engineer who fails to keep a sharp lookout upon the track is wanting in due care to passengers and; lawful travelers, because of the probability of danger to each from such failure, such conduct is not a want of due care with respect to a man asleep upon the track, because of the presumption upon which the engineer has a right to rely, that no one would be so grossly negligent in courting death. As there was no duty imposed upon the engineer to look out for the sleeping man, there was no negligence in his failing to see Howe. It would follow that the engineer’s failing to learn the peril earlier was not a proximate cause of Howe’s injury.
As applied to a case like the present, therefore, we believe the rule-relied on by counsel for plaintiff below should be construed to mean that the negligence of the plaintiff will be no defense if the defendant,, after he knew the peril of the plaintiff, did not use due care to avoid of This view seems to be sustained by authority and by several eminent text writers. 2 Thomp. Neg. p. 1157; Cooley, Torts, § 674; O’Keefe v. Railroad Co., 32 Iowa, 467; Yarnall v. Railroad Co., 75 Mo. 575; Denman v. Railroad Co., 26 Minn. 357, 4 N. W. Rep. 605; Button v. Railroad Co., 18 N. Y. 248, 259.
In Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. Rep. 653, the plaintiff’s foot was crushed between the timbers of a wharf by the defendant’s steamer’s striking the wharf with undue force. The defense-was plaintiff’s contributory negligence. The court told the jury that, if the defendant’s agents might have avoided the consequence of plaintiff’s-negligence by due care, it was no defense. To the objection that this rule was not applicable to the circumstances, the supreme court answered that it was, because there was evidence to show that the defendant’s agents knew where the plaintiff was standing, and that undue force-in striking the wharf would result in his injury. This would seem to-show that, in the opinion of the supreme court, knowledge of the plaintiff’s peril was required to make the rule applicable.
In O’Keefe v. Railroad Co., supra, a man lay down at night on the defendant’s track in a state of intoxication. He was there run over by an engine which had no headlight. The court charged the jury that he could not, under these circumstances, recover, “ unless they found that defendant or its agents had knowledge that he was thus lying, in time to-., prevent the accident-, or could have known, with the exercise of ordinary caution.” The judgment of plaintiff was reversed on the ground that the-italicized clause was error.
In Yarnall v. Railroad Co., supra, the plaintiff’s intestate lay intoxicated upon the track, and it was held that the railway company could, only be held for such negligence causing the accident as occurred after-its agents became aware of plaintiff’s exposed condition.
In Button v. Railroad Co., supra, plaintiff lay down at night in a state-of intoxication on a street car track, and was run over. The court be- *370 low said to the jury that the defendants were liable unless the negligence <of the deceased directly contributed to the injury, and a verdict followed for the plaintiff. The case was reversed, Harris, J., saying of the plaintiff :
“If in his senses, as he must be presumed to have been, he courted his own destruction. Under these circumstances, he must be regarded as having cooperated with the defendants to produce his death. Unless the jury could be made to believe that, after the deceased was discovered, the defendants by reasonable care could have avoided the fatal result, they were not liable.”
In Denman v. Railroad Co., supra, the plaintiff went to sleep on the defendant’s track, and was severely injured by a passing train. In holding that the plaintiff could not recover, the supreme court of Minnesota used the following language:
“The only negligence upon the part of defendant’s employes upon the train, which the plaintiff argues that the evidence tends to establish, is evidence going to show that the track at the place of the accident, and for a long distance on either side of such place, was level and straight, so that an object no larger than a man’s hat could be seen for four or five hundred yards, and that therefore the employes were negligent in not observing the defendant. In our opinion, this is no evidence whatever of negligence on the part of the defendant in a case of this kind. The plaintiff had no right whatever to sit or lie down upon the track, or near enough to it to be within reach of a passing train, and go to sleep. If he saw fit to do so. he took the risk upon himself. The defendant owed him no duty except that of exercising due diligence to avoid injuring him after discovering that he was there. If the defendant’s employes in charge of the train had neglected to watch the track, and so had failed to observe some obstruction by which the train was thrown from the track, and, as a consequence, a passenger was injured, the case, unless some excuse appeared, might well be one in which the defendant would be liable to the passenger for negligence. The reason would be because the defendant owed the passenger a duty, the neglect of which had occasioned the injury. But, for the reasons before given, the plaintiff occupies a position entirely different from that of a passenger. ”
The foregoing is, in our opinion, a correct statement of the law governing the present case. We are aware that there are many cases, which are collected in Shearman & Redfield’s work on Negligence, (4th Ed. § 99, note,) in which the rule is thus expressed: The defendant is liable, in spite of plaintiff’s negligence, if, after he discovers, or ought by due care to discover, plaintiff’s peril, he might by the use of due care avoid the consequences of plaintiff’s negligence, and does not do so. The due care with respect to discovering plaintiff’s negligence depends upon the relation of the parties. In a case like the present, where, in our view, there is no duty on the part of defendant to discover plaintiff’s peril, the additional clause adds nothing to the effect of the rule, but implies a duty which, as we have found, does not exist.
The result is that on two grounds the court below should have' directed a verdict for the defendant, and the refusal to do so was error which requires us to reverse the judgment and order a new trial.