LOUISVILLE & N. R. CO. v. EAST TENNESSEE, V. & G. RY. CO.

(Circuit Court of Appeals, Sixth Circuit.   March 6, 1894.)

No. 69.

1. CONTRIBUTORY NEGLIGENCE—RAILROAD CROSSINGS.
    It is not per se contributory negligence, when recovery is sought for injury to a car, to halt a train, in accordance with long mutual acquiescence, at a point where two railways cross each other, where a collision thereupon follows through failure of an approaching train to stop within 50 feet of the crossing (Act Ky. March 10, 1894) by reason of defective brakes.

2. SAME—EVIDENCE.
    Proof of contributory negligence in not moving a train with due diligence out of the way of a train running "wild" cannot be established by evidence which is consistent with two contradictory states of fact.

3. DAMAGES—EVIDENCE.
    Evidence, in mitigation of damages for injury to a car, that another car of a different kind had once been taken apart and lengthened, is not admissible.

In Error to the Circuit Court of the United States for the Northern Division of the Eastern District of Tennessee.

This was a writ of error to the judgment of the circuit court of the United States for the eastern district of Tennessee, northern division, in favor of the East Tennessee, Virginia & Georgia Railway Company, hereafter referred to as the "Tennessee Company," against the Louisville & Nashville Railroad Company, hereafter referred to as the "Louisville Company," for $11,219.94, as damages for an injury to a sleeping car caused by the collision with it of a freight train of the Louisville Company.

The facts are as follows: On the 7th day of November, 1890, about 3 o'clock in the morning, the north-bound passenger train of the Cincinnati, New Orleans & Texas Pacific Railway Company, hereafter referred to as the "Cincinnati Company," arrived at Junction City, Ky., where its tracks cross those of the Louisville Company at grade.   After coming to a full stop, 100 feet from the crossing, the train moved on over the crossing until the baggage and mail cars were at the platform of the station, on the north side.   The platform was not long enough for the whole train, so that the smoking car was left on the crossing with the ladies' car, and the sleeping car behind it.   Within two minutes after the train had stopped the second time, and while the baggage and mail matter were being transferred to the platform, a freight train upon the Louisville Company's line, bound east, reached the top of a grade which descends for a mile and a quarter to this junction from the west.   The engineer of the freight train whistled several times for brakes, but, finding that the brakes were useless, and that the train was beyond the control of the crew, he blew signals of alarm to the Cincinnati passenger train, which he could see as he came down the grade.   The engineer and conductor of the passenger train, in accordance with their duty, had gone to the telegraph office to register, and receive telegraphic orders, and did not hear the alarm signal.   A porter of the passenger train did hear it, however, and he signaled to the fireman of the passenger engine, who at once started up his engine, and succeeded in pulling over the crossing the smoking car and the ladies' car.   The sleeping car "Orkney," however, was only half over the Louisville track when the freight train struck it, carrying away the four middle sections, and leaving the two ends standing.   No one was killed, but two or three persons were injured.   The sleeping car belonged to the Pullman Company, but was under the control of the Tennessee Company by virtue of a contract which made the latter liable to the Pullman Company for any injury to the car.   It was running in the Cincinnati Company's train by an arrangement between the Cincinnati and Tennessee Companies for through sleeping cars from Cincinnati to Jacksonville

over the lines of both. For eight years it had been the habit of both the Louisville and the Cincinnati Companies to allow their trains to stand upon the railway crossing at this station while the baggage and mail were being transferred. The platforms of both companies were so short that trains coming from the south on the Cincinnati track and from the west on the Louisville track could not stop their baggage and mail cars alongside the platform without leaving the rear cars either on the crossing or on the other side of it. This was well known to all the employes of both railway companies engaged in running trains by this junction.

The statute of Kentucky passed May 10, 1890, provides: "That wherever railways cross each other in this state the trains shall be brought to a full stop at least fifty feet before getting to the crossing: provided, however, that the provisions of this section shall not be applicable where the crossings of such roads are regulated by derailing switches or other safety appliances which prevent collisions at crossings nor where a flagman or watchman is stationed at such crossings and signals that the train may cross in safety. (2) That any corporation failing to stop its trains as herein directed shall be guilty of misdemeanor and shall be fined not less than one hundred or more than five hundred dollars for each offense; and the engineers of said trains shall be fined not less than twenty nor more than one hundred dollars for each offense."

Henry H. Ingersoll and Masterson Peyton, for plaintiff in error.

Henderson & Jeroulman and Edward Colston, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and BARR, District Judge.

TAFT, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The only real defense in this case was that the Cincinnati Company was guilty of contributory negligence, and the chief errors assigned are based on rulings made in the trial of this issue. All the evidence on both sides showed, without contradiction, that the Louisville Company was guilty of negligence in sending out a freight train equipped with poor brakes. Counsel for defendant in error contend that the errors assigned on the issue of contributory negligence are immaterial, because the recovery of the Tennessee Company, the plaintiff below, could not be defeated by the contributory negligence, if any, of the Cincinnati Company. It is claimed that, under the contract existing between the two companies as to the use of the injured sleeping car, the Cincinnati Company was not the agent or partner, but only the special bailee, of the Tennessee Company, and that from such a relation, no responsibility for the contributory negligence of the former can be imputed to the latter. Thus is presented a question of the application of the principle laid down in Little v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391, to the facts of this case, which has elicited an interesting discussion by counsel. But it is not necessary to decide it. The court below held with the plaintiff in error on the point, and the judgment can be sustained without reversing that ruling.

The main error assigned is that the court refused to charge that it was contributory negligence per se for the Cincinnati Company to halt its train on the crossing, and did charge that the Louisville Company was estopped to make this defense after acquiescing in

and taking part in such a practice for eight years.  It is to be observed that this is not a suit by a passenger against a common carrier, and that the standard of negligence as between the two companies is quite different from that which obtains in suits by an injured passenger.  This distinction is fully brought out in the opinion of the supreme court of Iowa in the case of Kellow v. Railway Co., 68 Iowa, 470, 23 N. W. 740, and 27 N. W. 466, upon which counsel for plaintiff in error chiefly rely.  That case was quite like this in its facts, except that there was no statute of Iowa requiring trains to stop before crossing, though it was their known custom to do so. There a passenger was killed, and the suit was brought by his representatives against the company in whose car he was.  The court, in effect, held that the question was one for the jury to determine, whether, in allowing the car to stand upon the crossing, the company had exercised every precaution that human foresight could suggest.  The jury had returned a special verdict that the defendant company "could not reasonably have expected or anticipated, under the circumstances, that cars without any control would run down upon the crossing as they did."  The court held that this finding did not negative the possibility that the company had not taken every precaution against danger to its passengers which human foresight could suggest, and expressly made the distinction between the standard of care to be maintained in such a case between a passenger and his carrier and that to be maintained between the carrier and a stranger.  The principle that the standard of due care and the existence of negligence depend upon the relation existing between the party sought to be charged and the party injured is elementary, and is too well settled to need lengthy discussion.   Valley Co. v. Howe, 6 U. S. App. 172, 3 C. C. A. 121, 52 Fed. 362; Denman v. Railroad Co., 26 Minn. 357, 4 N. W. 605.  The recovery here sought was for injury to property.  The same action would have lain if the car injured had had no passengers, or if it had been a freight car.  Why should the standard of due care for property, as between the companies, vary because in a particular case one of them may be under a duty to a third person of a higher and more exacting character than that which he ought to exercise in regard to his property?  The Louisville Company cannot shield itself from liability for admitted negligence by holding the Cincinnati Company to that high degree of care which it owes only to its passengers.  The standard of care to which the Cincinnati Company can be held is that which a reasonably prudent man would exercise in the protection of his own property.   Did the Cincinnati Company exercise such care in allowing its train to stand upon the crossing?

The statute of Kentucky required the Louisville train, on penalty of a fine, to be imposed both on the company and the engineer, to come to a full stop 50 feet before the crossing.   By acquiescence in the arrangement for halting trains upon the crossing, each company impliedly agreed that during the occupancy of the track by the train of one the other would not, either negligently or intentionally, disturb or interfere with that occupancy.   Was it negligence, as between the two companies, for the one to rely on the other's com-

pliance with the statute and its tacit agreement?    It seems to us
clear that it was not.    It does not lie in the mouth of the Louisville
Company, after consenting that the Cincinnati Company should put
its train in a place not dangerous, except through the negligence
of the Louisville Company, to say that the Cincinnati Company was
wanting in due care in reposing such invited confidence.    It is not
negligence, ordinarily, for one to act on the theory that another will
comply with his statutory duty, unless there is some reason for think-
ing otherwise.    Jetter v. Railroad Co., 41* N. Y. 154;   Baker v.
Pendergast, 32 Ohio St. 494;   Railroad Co. v. Schneider, 45 Ohio St.
678-699, 17 N. E. 321;   Stapley v. Railroad Co., L. R. 1 Exch. 21.
Still less can the charge of contributory negligence be made by one
who invited or consented to the action, and thereby impliedly
agreed that it should be attended with no danger from him.    The
cases of Railroad Co. v. Houston, 95 U. S. 697, and Schofield v. Rail-
road Co., 114 U. S. 615, 5 Sup. Ct. 1125, are said to be contrary to the
authorities just cited.    We do not think there is any conflict.    The
latter were suits for injuries to travelers in crossing a railroad track,
and the question was whether it was any excuse for the traveler not
to look and listen because the engineer had not either rung the bell
or blown the whistle.    The supreme court held that it was not.    In
such a case, of course, in order that the signal which the engineer
is required to give should be of any service, the traveler is obliged
to use his senses to observe it.    He knows that the trains will cross,
and have the right to cross the road, at such a rate of speed, as to
make it impossible for them to stop, should he be on the track.    The
crossing is therefore necessarily a place of danger, and it is manifestly
negligence in him not to look and listen both for the signal and the
train.    Where, however, it is the statutory duty of every train to
stop at the crossing, and the railroad company agrees that every
train will stop there, a very different question is presented.

To state the case in another way, the conduct of the Cincinnati
Company, in allowing its train to stand upon the track, was not,
in view of the arrangement between the companies by which it was
permitted, the proximate cause of the accident, and could not, there-
fore, constitute contributory negligence defeating its action.    If,
with a knowledge of what the plaintiff has done or is about to do,
the defendant can, by ordinary care, avoid the injury likely to re-
sult therefrom, and does not, defendant's failure to avoid the injury
is the last link in the chain of causes, and is, in law, the sole proxi-
mate cause.    The conduct of the plaintiff is not, then, a cause but a
condition of the situation with respect to which the defendant has to
act.    The principle is established by a long series of cases.    In Davies
v. Mann, 10 Mees. & W. 546, the plaintiff negligently left his donkey
in the street, with its fore feet fettered.    The defendant's driver
negligently drove his team against it, and killed it.    The court of
exchequer held that, even if it was negligent and unlawful for the
donkey to be thus left in the street, it was no bar to the recovery.
So, in Mayor, etc., of Colchester v. Brooke, 7 Adol. & E. (N. S.) 339,
377, 378, where oysters were negligently and unlawfully left in the
channel of a navigable river, it was held that a vessel which negli-

gently ran against them, knowing them to be there, was liable for the injury. So, in Greenland v. Chaplin, 5 Exch. 243, where a passenger on one steamboat was injured by the fall of an anchor caused by another boat's negligently colliding with the first boat, it was held that the colliding boat was liable, although the passenger was in a dangerous place in the bow, and the anchor was carelessly stowed. So, in Austin v. Steamboat Co., 43 N. Y. 75, the action was by a tow for injury from a collision by a steamboat. The tow had run aground, and the steamer, in attempting to get by her through a new channel, became unmanageable, and sheered into her. It was held to be negligence causing the collision in the steamer to seek the new channel, and the fact that the tow had run aground through the same negligence was held to be no defense. These cases have been upheld and followed by the supreme court of the United States in Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653. See, also, Valley Co. v. Howe, 6 U. S. App. 172, 3 C. C. A. 121, 52 Fed. 362; Radley v. Railway Co., 1 App. Cas. 754; Whart. Neg. § 329 et seq. If the engineer of the Louisville train, after seeing the Cincinnati train on the track, had been negligent in applying his brakes, the application of the cases just cited to the case at bar would be obvious, for then clearly the negligence of the Louisville engineer would have intervened as a cause between the position of the Cincinnati train upon the track and the collision. But there is nothing to show that the Louisville engineer was negligent after he saw the Cincinnati train. The negligence of his company was anterior to that, and consisted in allowing its train to start on its trip with a poor equipment of brakes. At first blush, it might seem, therefore, that the position of the Cincinnati train upon the track was nearer in the chain of causes to the collision than the failure of the Louisville Company to provide good brakes. But the negligence of a person and its proximity as a legal cause to the ensuing accident is determined by the knowledge he has of the situation in respect to which he is called upon to act. If he invites another to do an act which only the possibility of negligence on his part renders dangerous, then his subsequent negligence, though concurrent in point of time with the invited act, is nearer in the chain of legal causes to the resulting injury. The practice of the Cincinnati Company to halt its trains upon the crossing was well known to and was acquiesced in by the Louisville Company. Even if the practice was negligent, the Louisville Company, knowing its existence when it sent out a train to Junction City, could reasonably anticipate that the train would possibly and probably be on the grade west of the junction at a time when a Cincinnati train should be standing on the crossing, and that poor brakes would result in collision. Therefore it is that the position of the Cincinnati train on the track at the time of the collision was not the legal cause of it, at least so far as the Louisville Company was concerned, but was a condition of the situation with respect to which the latter company was obliged to use due care when it started the freight train on the trip, and the absence of such care in not providing good brakes was the sole proximate cause of the accident.

It is insisted that the Cincinnati Company was not entitled to a

verdict, because the agreement to stop trains on the crossing was void as against public policy. As already pointed out, the practice was not forbidden by the Kentucky statute. Whether it was negligence per se towards a passenger is a question which we need not decide. Suffice it to say that the question is one of negligence between the two companies, and nothing else. Even if, for the sake of argument, it be conceded that the agreement for such use of the crossing could not be enforced because of the element of possible danger to a passenger, this suit is not based on any such agreement. The action is for a tort. It will defeat an action for tort if the injured party, in making his case, must show that he was at the time of the injury violating a positive statute, or committing malum in se, provided such violation of law or crime contributes to the injury. Pol. Torts, 150, 151. But the act of the Cincinnati Company in allowing its train to stand on the crossing was neither malum prohibitum nor malum in se. If it was wrongful, it was so because it was negligence, and its effect upon the Cincinnati Company's right to recover must be determined under the ordinary rules obtaining in negligence cases. According to those rules, as we have seen, if there was any negligence on the part of the Cincinnati Company, it was not the proximate cause of the accident. For these reasons we think the court was right in instructing the jury that, so far as the Louisville Company was concerned, it was not contributory negligence for the Cincinnati Company to halt its trains upon the crossing.

The court left to the jury the question whether the Cincinnati train was moved over the crossing with due diligence after the employes of that company had reason to apprehend the approaching danger. Upon this issue the telegraph operator of the Louisville Company at the junction testified that he spoke to the conductor and the engineer of the Cincinnati train in the crowd on the platform, and said that the freight train was "wild, or loose;" that this was in time to enable them to get their train out of the way, but that they paid no attention to what he said, and did not seem to hear him. The engineer testified that he heard no warning. The conductor was not produced. The defendant below asked the court to call the jury's attention to the fact that the conductor was not produced, and the court failed to do so. The court, in the original charge, had said upon this point:

"Now, there is the engineer, who swears he was not notified of any such danger. There is a witness who says the engineer was, although he says he does not know whether the engineer heard him or not."

And then, after being requested to give certain charges, including the one in respect to the conductor, the court said:

"These other propositions I have substantially repeated in my charge. It is only asking me to say over what I have said. You must be satisfied of two things: that these agents of the C. S. road [C., N. O. & T. P. Ry.] were notified in time; that after such notice they used active diligence in discovering and avoiding danger. I told you there was a difference between the witnesses, especially the engineer and another witness. Take the whole body of the case, and come to your conclusions as to what are the facts in the case, and return your verdict accordingly."

We do not think that there was any prejudicial error in the court's failing to give the charge as requested. The evidence of the telegraph operator was of a kind not to need contradiction, because it was rather more consistent with the hypothesis that the conductor did not hear the operator than that he did. It is hardly conceivable that, if the conductor had heard the words which were said to have been spoken, he would not have given some sign. When a party with the burden on him introduces evidence consistent with two different states of fact, he proves neither. Ellis v. Railway Co., L. R. 9 C. P. 551.

Error is assigned to the action of the court in ruling out the depositions of two witnesses who testified that the private car of the president of the Nashville, Chattanooga & St. Louis Railway Company had been lengthened 10 feet by the insertion of a section in the middle of the car. This was offered on the question of damages, to show that it would have been possible to repair the injured sleeping car by reuniting the two ends. It was plainly incompetent for the purpose. The defendant was permitted to call experts to prove that the sleeping car, as it was after the collision, could have been thus repaired; but it clearly had no right in chief to show particular instances, and especially did it not have the right to prove as a particular instance that another car of a different kind had once been taken apart in a car shop and lengthened. Such an instance had no legitimate tendency to prove that a sleeping car which had been broken into two parts by the collision of a freight train might be treated in the same way. There was evidence to show that after the accident the wreck of the sleeping car was dismantled by employes of the Cincinnati Company, and things of value carried away. The court charged the jury that the measure of damages was the difference between the value of the car before the accident and its value just after the accident and before it was dismantled. This was right. The complaint that, under this charge, the damages found were excessive, we cannot consider. Association v. Rutherford, 1 U. S. App. 296, 2 C. C. A. 354, 51 Fed. 513.

The judgment of the circuit court is affirmed, with costs.