GULF, COLORADO & SANTA FE vs BOLTON.

Opinion Delivered June 12, 1899.

1. *Railway Companies—Injuries to Passenger—Contributory Negligence.*

One who is about to take passage upon a railway train, who leaves the waiting room provided for passengers, and goes out upon the main track and goes to sleep, is guilty of the grossest negligence, and the only duty, which the railway company owes him, is not to wantomly and unnecessarily inflict injury upon him after its employes have discovered him.

2. *Contributory Negligence—Duty of Court to Instruct Verdict.*

Plaintiff was not discovered by defendant's engineer until its train, a heavy freight train was within 150 feet of plaintiff. After discovering plaintiff the engineer used every means at his command to bring his train to a stop. The failure to dis-

cover plaintiff sooner was not negligence on the part of the railroad. Plaintiff was guilty of contributory negligence. *Held*, The Court should have instructed a verdict for defendant.

Appeal from the United States Court for the Southern District.

CONSTANTINE B. KILGORE, Judge.

Action by Josie Bolton and others against the Gulf, Colorado & Santa Fe Railway Company. Judgment for plaintiff. Defendant appeals. Reversed.

Robert D. Bolton, residing at Oakland, a small village near Ardmore, in the Chickasaw Nation, I. T., was the manager of a cotton gin and a gristmill, and had an interest in a mercantile establishment, at that place; and this action was brought by his widow, Josie Bolton, and his minor children, Roberta and Mamie Bolton, to recover damages of the appellant, the Gulf, Colorado & Santa Fe Railway Company, for the alleged wrongful killing of the said Robert Bolton. On the 11th of December, 1895, Robert B. Bolton went from his home to the town of Gainesville, in the state of Texas; and on the night of the same day he purchased a ticket from the appellant railway company which entitled him to transportation over its line of railway from Gainesville to the town of Ardmore, in the Indian Territory, and at about 11 o'clock on that night he entered a passenger train of the appellant railway company, going north, for Ardmore, Ind. T. This train arrived at Ardmore about midnight, and stopped at the station at Ardmore for the purpose of permitting passengers to alight and to take on passengers. But Bolton was asleep and failed to leave the train at Ardmore, and after the train had left Ardmore the conductor came through the car where he was, and awoke him, and told him that the train had passed Ardmore; and after they

had talked awhile, Bolton paid his fare to Berwyn, the next station north of Ardmore, where the train arrived about 1 o'clock a. m., and stopped to permit Bolton and a man by the name of Attaway to depart from the train, and they did depart, and Attaway took Bolton to the waiting room, opened the door for Bolton, and Bolton entered. · The conductor had told Attaway to tell the agent at Berwyn to send Bolton back to Ardmore on the next passenger train south, but Attaway did not do this. The next passenger train going south was due in about an hour or two. Some time after Bolton entered the waiting room provided for passengers, he left, and went out on the platform in front of the station, and, going to a point near the north end of the platform, sat down upon the edge of the platform, with his feet upon the ground, and within a foot or a foot and a half of the rail of the main track, and went to sleep; his head falling forward on his breast. At about 2:15 a. m. a freight train bound north, consisting of 10 loaded cars, caboose, and engine, about 350 to 375 feet in length, and running about 15 to 18 miles per hour, arrived at Berwyn station, and whistled for the station and for the crossing south of the depot, and also whistled, in answer to a signal from the conductor, who was at the rear end of train, that the train would not stop. The deceased was sitting on the edge of the platform, to the north of the station, and the light from a lamp at the south of the station was burning, and the light thrown by it was between the engine and the deceased. The engineer could ordinarily see an object upon the track, with the aid of the headlight, at night, from 120 to 150 feet; and it was possible to stop the train at the rate of speed it was running, in a distance equal to the length of the train. Bolton was not discovered by the engineer of the train until the engine had reached the south end of the depot, and about 140 to 150 feet distance from Bolton; and the engineer at once applied the emergency air,

(30)

reversed his engine, and "put sand under her" to keep the wheels from slipping, but was unable to stop the train until Bolton was struck in the head with the cylinder of the engine and knocked over on the depot platform. As soon as the train came to a stop, the trainmen carried Bolton into the depot. Dr. Wright, a physician, was at once summoned, and arrived within a few minutes after Bolton was carried into the depot; but Bolton never recovered consciousness, and died in about half an hour from the injuries thus received. The testimony further discloses that Bolton was probably intoxicated, as it appears from the testimony of appellees' witnesses that he was drinking, and that some one had vomited near the place where he sat when he was struck by the engine, and there was found in a sack which he had at the time of the injury a jug of whiskey. Trial was had before a jury, and a verdict rendered in favor of the plaintiffs for the sum of $9,000. A motion for a new trial was made and overruled, and an appeal prayed and allowed to this court.

*Ledbetter & Bledsoe* and *J. W. Terry*, for appellant.

*Hamp P. Abney, Johnson & Cruce*, and *W. O. Davis*, for appellees.

THOMAS, J. The errors assigned by appellant, which are properly presented for review here, and which it will be necessary to consider, are the following: (1) The request of the appellant, made to the trial court, to instruct the jury to return a verdict in its favor, which request was refused, and the refusal excepted to. (2) The request of the appellant, made to the trial court, to instruct the jury as follows: "The court instructs the jury that, taking all the testimony in this case with its greatest probative force, it shows that the deceased was guilty of contributory negligence, and the plaintiffs cannot recover,"—which request was refused, and the refusal excepted to. (3) The request of the appel-

lant, made to the trial court, to instruct the jury as follows: "You are further instructed that a person who goes upon a railroad track, other than at a crossing, is a trespasser, and that the railroad company owes no further duty to discover such trespasser upon its track, except at a crossing, than to avoid inflicting a wanton injury upon him after his dangerous position shall have been discovered,"—which request was refused, and the refusal excepted to by appellant. (4) The request of the appellant, made to the trial court, to instruct the jury as follows: "You are further instructed that the employes of a railway company owe no duty to a person who is a trespasser upon its tracks, to keep a lookout for and discover him so as to prevent injury to him,"— which request was refused, and the refusal excepted to by appellant. (5) The court charged the jury as follows: "But if the deceased failed to exercise that degree of care and caution which an ordinarily prudent man would have used under like circumstances, and thereby placed himself in a position of peril, it is still imcumbent upon the defendant to exercise due care and diligence to prevent the injury, if it knew, or could have known by the exercise of reasonable diligence, the dangerous position of the deceased. Therefore, notwithstanding the fact that the deceased put himself in the way of great peril, if the defendant saw him or could have seen him, in time to have prevented his death, by the use of ordinary diligence, and failed to use such diligence, the plaintiff in such case would have been entitled to recover."—to which instruction of the court the appellant excepted.

In the case of Newport News & M. V. Co. vs Howe, 3 C. C. A. 121, 52 Fed. 362, a freight train upon appellant's railway parted; and the conductor, who was on the rear part of the train, sent Howe, a brakeman, forward with a lantern to signal the engine, when it should return, and to give the engineer information as to the whereabouts of the

rear cars.   Howe went forward several hundred yards, sat down on the end of a tie, put his lantern down near him and went to sleep, with his arm thrown over the rail.   The engineer, after running about five miles, discovered that the train had parted, side-tracked the cars still attached, and started his engine and tender back, to take up the rest of the train; and not discovering Howe in time to stop his engine, one of the rear wheels of the tender ran over Howe's arm and cut it off.   Judge Taft, in delivering the opinion of the court in that case, said:   "We are of the opinion that, on the evidence adduced, it was the duty of the court below to have directed a verdict for the defendant on the ground of the plaintiff's contributory negligence.   In order that a defendant shalll be exonerated from liability by the plaintiff's negligence, it must appear that it was the proximate cause of the accident.   It need not be the sole proximate cause.   It is enough if it concurs with the defendant's negligence to produce the injury.   Plaintiff admits that, with knowledge that an engine was approaching, on a very dark night, he laid down with his arm over the rail and went to sleep.   Grosser negligence, more certain to result in injury, can hardly be suggested.   It is charged that the engineer was negligent in not sending out before him his brakeman, in not signaling his return, by whistling as often as he should, and in running at a higher rate of speed than four miles an hour,—all contrary to the rules of the company.   There was evidence tending to show such negligence, but it was all plainly concurrent with that of the plaintiff, and therefore constitutes no ground for recovery.   The counsel for the plaintiff below rely, however, on the conduct of the engineer at the time of the accident, in failing to stop the engine before Howe was run over, as bringing the case within the so-called exception to the general rules of contributory negligence, according to which plaintiff's negligence is no defense, if it appears that

by the exercise of due care the defendant might have avoided the consequences of plaintiff's negligence. The exception obviously refers only to those cases where the negligence of the plaintiff is not a proximate cause of his injury, because, after the fact of plaintiff's negligence, and with that as a circumstance or condition of the situation, defendant might then, by exercise of due care, avoid the injury. In such cases defendant's negligence, in the chain of causes leading to the accident, intervenes between plaintiff's negligence and the injury, and is, in law, the sole proximate cause. * * * Upon the point, however, if the engineer had looked out, he could not have seen Howe's perilous position in time to stop the engine before striking him, the evidence is conflicting; and, if the point is material, it should have been submitted to the jury. It remains to inquire, therefore, whether the failure of the engineer to see Howe on the track in time to avoid the accident, when by looking out he might have seen him, can be said to be a legal cause of the accident. If so, it is the sole proximate cause, and would render the company liable. When a man lies down to sleep upon a railroad track at night, with full knowledge that a train is about to pass that way, does he thereby impose upon the engineer the duty, with respect to him, of keeping a lookout, and of discovering him upon the track? It is true that the engineer owes it to the passengers on the train, and to persons lawfully upon the track, to keep a lookout in order to prevent injury to them. But that is because danger to such persons is probable, and should be looked for to be avoided. One is bound to use one's own so as not to injure another. This duty, of course, is commensurate with the reasonable probability that any particular use of one's own will injure another. Now, there is no probability that a man will be asleep upon the railroad track. While, therefore, an engineer who fails to keep a sharp lookout upon the track is wanting in due care to passengers

and lawful travelers, because of the probability of danger
to each from such failure, such conduct is not a want of due
care with respect to a man asleep upon the track, because of
the presumption—upon which the engineer has a right to
rely—that no one would be so grossly negligent in courting
death.  As there was no duty imposed upon the engineer to
look out for the sleeping man, there was no negligence in
his failing to see Howe.  It would follow that the engineer's
failing to learn the peril earlier was not a proximate cause
of Howe's injury. ''

As applied to a case like the present, we believe the
rule relied on by counsel for plaintiff below should be con-
strued to mean that the negligence of the plaintiff will be no
defense, if the defendant, after he knew the peril of the
plaintiff, did not use care to avoid it.  This view seems to
be sustained by authority, and by several eminent text
writers.  2 Thomp. Neg. 1157; Cooley, Torts, 674; O'Keefe
vs Railroad Co., 32 Iowa, 467;  Yarnall vs Railway Co., 75
Mo. 575;  Denman vs Railroad Co., 26 Minn. 357, 4 N. W.
605;  Button vs Railroad Co., 18 N. Y. 248, 259.  In O'Keefe
vs Railroad Co., supra, a man lay down at night on defend-
ant's track in a state of intoxication.  He was there run
over by an engine which had no headlight.  The court
charged the jury that he could not, under those circum-
stances recover, ''unless they found that defendant or his
agents had knowledge that he was thus lying, in time to
prevent the accident, *or could have known with the exercise of
ordinary caution.*''  The judgment for plaintiff was reversed
on the ground that the italicized clause was error.  In
Yarnall vs Railway Co., supra, the plaintiff's inestate lay
intoxicated upon the track; and it was held that the railway
company could only be held for such negligence, causing
the accident, as occurred after its agents became aware of
plaintiff's exposed condition.  In Button vs Railroad Co.,
supra, plaintiff lay down at night in a state of intoxication,

on a street-car track, and was run over. The court below said to the jury that the defendants were liable unless the negligence of the deceased directly contributed to the injury, and a verdict followed for the plaintiff. The case was reversed; Harris, J., saying of the plaintiff: "If in his senses, as he must be presumed to have been, he courted his own destruction. Uuder these circumstances, he must be regarged as having co-operated with the defendants to produce his death. Unless the jury could be made to believe that, after the deceased was discovered, the defendants, by reasonable care, could have avoided the fatal result, they were not liable." In Denman vs Railroad Co., supra, the plaintiff went to sleep on the defendant's track, and was severely injured by a passing train. In holding that the plaintiff could not recover, the supreme court of Minnesota used the following language: "The only negligence upon the part of the defendant's employes upon the train, which the plaintiff argues that the evidence tends to establish, is evidence going to show that the track at the place of the accident, and for a long distance on either side of such place, was level and straight, so that an object no larger than a man's hat could be seen for four or five hundred yards, and that, therefore, the employes of the defendant were negligent in not observing the plaintiff. In our opinion, this is no evidence whatever of negligence on the part of a defendant in a case of this kind. The plaintiff had no right whatever to sit or lie down upon the track, or near enough to it to be within reach of a passing train and go to sleep. If he saw fit to do so, he took the risk upon himself. The defendant owed him no duty, except that to exercise due diligence to avoid injuring him after discovering he was there. If the defendant's employes in charge of the train had neglected to watch the track, and so had failed to observe some obstruction by which the train was thrown from the track, and as a conse-

quence a passenger was injured, the case, unless some excuse appeared, might well be one in which the defendant would be liable to the passenger for the negligence. The reason would be because the defendant owed the passenger a duty, the neglect of which had occasioned the injury. But, for the reasons before given, the plaintiff occupies a position entirely different from that of a passenger." The foregoing is, in our opinion, a correct statement of the law governing the present case. We are aware that there are many cases, which are collected in Shearman & Redfield's work on Negligence (4th Ed.), in which the rule is thus expressed: The defendant is liable, in spite of plaintiff's negligence, if, after he discovers, or ought by due care to discover, plaintiff's peril, he might, by the use of due care, avoid the consequences of plainliff's negligence, and does not do so. The due care with respect to discovering plaintiff's negligence depends upon the relation of the parties. In a case like the present, where, in our view, there is no duty on the part of the defendant to discover plaintiff's peril, the additional clause adds nothing to the effect of the rule, but implies a duty which, as we have found, does not exist. In the case of Railway Co. vs Bennett, 16 C. C. A. 300, 69 Fed. 525, Sanborn, Circuit Judge, in delivering the opinion of the United States circuit court of appeals for the Eighth circuit, said: "The only duty which a railroad company owes to those who, without its knowledge or consent, enter upon its track, not at a crossing or other like public place, is not wantonly and unnecessarily to inflict injury upon them after its employes have discovered them. It owes them no duty to keep a lookout for them before they are discovered, because they are unlawfully upon the tracks, and the railroad company is not required to watch for violations of the law. Newport News & M. V. Co. vs Howe, 3 C. C. A. 121, 52 Fed. 362; Railway Co. vs Tartt, 12 C. C. A. 618, 64 Fed. 823; Railroad Co. vs Cook, 13 C. C. A. 364, 66

Fed. 115; Denman vs Railroad Co., 26 Minn. 357, 4 N. W. 605; Railway Co. vs Monday, 49 Ark. 257, 4 S. W. 782; Sibley vs Ratliff, 50 Ark. 477, 8 S. W. 686; O'Keefe vs Railroad Co., 32 Iowa, 467; Yarnall vs Railway Co., 75 Mo. 575; Button vs Railroad Co., 18 N. Y. 248, 259; Nicholson vs Railway Co., 41 N. Y. 525."

The charge of the trial court in the case at bar that, "notwithstanding the fact that the deceased put himself in the way of great peril, if the defendant saw him, or could have seen him, in time to have prevented his death, by the use of ordinary diligence, and failed to use such diligence, the plaintiff, in such case, would be entitled to recover," was, in effect, an instruction to the jury that it was the duty of the railway company to keep a lookout for Bolton; and it owed him no such duty, in the situation in which he had voluntarily placed himself, —a place where he had no right to be, and where sleep on his part would, in all probability, result fatally. One who is about to take passage upon a railway train has no right to leave the waiting room provided for passengers, and go out upon or near the main track of the railway, and go to sleep; and, if he do so, he is guilty of the grossest negligence, and the only duty which the railway company owes him is not to wantonly and unnecessarily inflict injury upon him after its employes have discovered him. In this case the testimony discloses that the engineer did not discover Bolton until his train was within 140 or 150 feet of him; that he used every means under his command to bring the train to a stop,—applying the emergency air, reversing the engine, and putting sand upon the track; that he had a loaded freight train of 10 cars, each 31 feet in length, with the couplings and engine and caboose, running 15 to 18 miles per hour; and that his train could not be stopped in a distance less than the length of the train, 350 to 375 feet. And his testimony is corroborated by the fireman, and also by Dr. Wright, a witness called by the

appellees. As we have seen, the failure of the engineer to discover Bolton sooner was not negligence on the part of the railway company; and, as there was no proof of other negligence on the part of the railway company, the request of the appellant to instruct the jury to return a verdict in its favor should have been given. It should have been given for the further reason that the death of Bolton was caused by his own negligence, the proof not disclosing any neglect on the part of the employes of the railway company after they discovered Bolton in his perilous position. For the reasons stated, the judgment of the trial court is reversed, and the cause dismissed. Reversed and dismissed.

SPRINGER, C. J., and CLAYTON and TOWNSEND, JJ. concur.