## ERIE R. CO. v. KANE.

(Circuit Court of Appeals, Sixth Circuit. August 15, 1902.)

### No. 944.

1. MASTER AND SERVANT—FELLOW SERVANTS—RAILROAD EMPLOYES UNDER OHIO STATUTE.

Under the second clause of section 3 of Act Ohio April 2, 1890 (87 Ohio Laws, p. 150), which provides that every person in the employ of a railroad company "having charge or control of employés in any separate branch or department shall be held to be the superior and not fellow-servant of employés in any other branch or department who have no power to direct or control in the branch or department in which they are employed," as such provision has been construed by the supreme court of the state, an engineer, although having control of but a single employé, may be the constructive superior of a fireman in a different branch of the service.

2. SAME—SEPARATE BRANCHES OF SERVICE.

Within the meaning of such provision as construed by the supreme court of Ohio, two switch crews handling different trains in the same yard are engaged in separate branches or departments of the service.

3. SAME—CONTRIBUTORY NEGLIGENCE OF SERVANT—VIOLATION OF RULES.

If the violation by a railroad employé of a reasonable rule made by the company for the government of employés in the discharge of their duties, and of which he has knowledge, causes or contributes to his injury, he is guilty of contributory negligence, as matter of law, which defeats the right to hold the master liable for such injury.

4. SAME—RAILROAD FIREMEN.

The petition in an action against a railroad company to recover for the death of a fireman on a switch engine who was killed in a collision with another switch engine alleged that at the time of collision the deceased was standing on the front of his engine, engaged in cleaning the number, which was below the headlight; and the evidence tended to support such allegation. A rule of the company provided that firemen must "attend to the fires of the locomotives when on the road, and to taking water and oiling the machinery; assist the engineman in watching for signals and obstructions; clean and polish their locomotives at the end of each trip; and assist in making repairs when necessary." The engine was engaged in switching, having cars coupled in front of it, and was moving backward slowly, when it met another switching train backing in the opposite direction. Held, that the court erred in refusing to instruct the jury that there could be no recovery if the deceased voluntarily violated the rule requiring him to assist the engineer in watching for signals and obstructions, and but for such violation he would not have been injured, and in leaving it to the jury to determine whether the violation of the rule, if proved, constituted negligence.

5. SAME—RIDING IN DANGEROUS PLACE.

The deceased was also guilty of contributory negligence, under the evidence and allegations of the petition, which defeated the right of re-

---

¶ 1. Who are fellow servants, see notes to Railroad Co. v. Smith, 8 C. C. A. 668; Railway Co. v. Johnston, 9 C. C. A. 596; Flippin v. Kimball, 31 C. C. A. 286.

¶ 3. See Master and Servant, vol. 34, Cent. Dig. §§ 759, 760.

covery, irrespective of the rule, in that he left his proper place in the cab, without necessity, and placed himself in a position of obvious danger, while the engine was in motion; it further appearing that he would not have been injured if he had remained in the cab.

6. CONTRIBUTORY NEGLIGENCE.
    One may be guilty of contributory negligence in failing to anticipate and act upon the contingency of another's negligence.

7. EVIDENCE—PRESUMPTION FROM FAILURE TO CALL WITNESS.
    It was error to instruct that an inference unfavorable to a party to a civil suit might be drawn from his failure to place on the stand a witness who was present in court in obedience to a subpœna issued by the other party, and equally accessible to both.

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

This is an action by the defendant in error against the plaintiff in error to recover damages for the wrongful death of her intestate, in which she obtained judgment for the sum of $4,000. The accident by which the decedent lost his life happened on the morning of December 17, 1897, after daylight. It was a collision between two trains which were being switched in the yard of the plaintiff in error at Niles, Ohio, by two switching crews. In that yard there are two main tracks, extending through it east and west. The north track is used by through trains going west, and the south one by such trains going east. The depot is located north of both of them. The collision occurred on the north or west-bound track, a short distance west of the depot. The easterly one of the two trains was composed of a yard engine, at its western end, headed eastward, and without a pilot or cowcatcher, and 10 or 11 freight cars; that next to the engine being an empty gondola. It was proceeding west slowly, and had about come to a stop. It had come in upon that track from a side track to the north of it, and had not yet cleared the switch; and the purpose was for it, as soon as it had done so, to proceed eastwardly. The westerly train was composed of a yard engine and 8 freight cars. The engine was at its western end, headed eastward. The car next to the engine and that on the end were box cars; and those between, gondolas,—all loaded with coal. It was proceeding eastwardly at a much higher rate of speed than the other. It had come in upon that track from the south or east-bound track by means of a crossover between the two, the western end of which connected with the former just west of where the westerly train was about to come to a stop, and upon the south or east-bound track from the New Lisbon branch of the plaintiff in error, east of the depot. As it passed the depot it also passed the other train, going in the same direction at a slower rate of speed; and its conductor left it, to enter the depot. The decedent was the fireman on the engine in the easterly train, and at the time of the collision was at the front end thereof, upon the pilot, or bunting beam, or head bar, as it is variously termed, in front of the boiler, engaged in cleaning the number of the engine, located just below the headlight. The effect of the collision between the two trains was to cause a collision between decedent's engine and the empty gondola next to it, and, by reason thereof, to force the body of the latter up against the head of the former, catching decedent between them, and, as it seems, killing him instantaneously. The ground upon which it was claimed that the plaintiff in error was liable in damages for the death of decedent, thus caused, was that the collision between the two trains was due to the negligence of the engineer of the westerly train, named Bowker, in proceeding eastwardly on the north or west-bound track, with knowledge that decedent's train was thereon and had the right of way, at a high rate of speed, without orders so to do, without keeping a proper lookout, and without giving warning of the approach of his train by bell or whistle. It was not seriously contended that Bowker had not been negligent, and there can be no doubt but that he was. The plaintiff in error sought to defeat the recovery upon two grounds: One was that Bowker was the fellow servant of the decedent; and the other, that decedent was

guilty of contributory negligence. In support of the latter contention, it proved that amongst the rules of the plaintiff in error, which decedent knew and had agreed to be governed by, was one in these words: "They [firemen] must report for duty at the appointed .time; attend to the fires of the loco-motives when on the road, and to taking water and oiling the machinery; assist the engineman in watching for signals and obstructions; clean and polish their locomotives at the end of each trip; and assist in making repairs when necessary."

John H. Clarke, for plaintiff in error.
T. McNamara and George F. Arrel, for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and COCH-RAN, District Judge.

COCHRAN, District Judge, after making the foregoing statement, delivered the opinion of the court.

1. The plaintiff in error requested the lower court to give to the jury two instructions, in these words:

"No. 1. The court says to you, as a matter of law, that, upon the evi-dence introduced upon this trial, the plaintiff's decedent, Thomas Kane, a fireman upon one engine and with one train crew, was, at the time of the accident complained of in this case, a fellow servant with Bowker, the en-gineer of another engine, with another train crew, whose negligence, it is claimed in this case, was the proximate cause of the accident resulting in Kane's death, and that therefore the plaintiff cannot recover in this case, and you should return a verdict in favor of the defendant railroad com-pany."

"No. 10. The court instructs you that the plaintiff cannot be entitled to recover in this case unless you shall find from the evidence introduced in this trial that the engineer, Bowker, had charge or control of other employés of the company; and, if you conclude that the plaintiff has failed to show that fact by a preponderance of the evidence, she cannot recover in this case, and you should return a verdict in favor of the defendant railroad."

It refused to give either one of these instructions, and, on the con-trary, instructed the jury that Bowker was not the fellow servant of the decedent. The refusal to give these instructions was duly ex-cepted to, and has been assigned as error. The lower court so acted because it was of the opinion that the second clause of the third sec-tion of an act of the legislature of Ohio passed April 2, 1890 (87 Ohio Laws, p. 150), as construed by the supreme court of Ohio in the case of Railroad Co. v. Margrat, 51 Ohio St. 130, 37 N. E. 11, applied to this case. That section is in these words:

"That in all actions against the railroad company for personal injury to or death resulting from personal injury of any person, while in the employ of such company, arising from the negligence of such company or any of its officers or employés, it shall be held, in addition to the liability now existing by law, that every person in the employ of such company, actually having power or authority to direct or control any other employé of such company, is not the fellow-servant, but superior of such other employé; also, that every person in the employ of such company having charge or control of employés in any separate branch or department shall be held to be the superior and not fellow-servant of employés in any other branch or de-partment who have no power to direct or control in the branch or department in which they are employed."

118 F.—15

The syllabus of the Margrat Case, which was prepared by the court, and expresses the law thereof, is in these words:

"(1) An engineer in charge of a locomotive on one train of cars of a railroad company is in a branch or department of its service separate from that of a brakeman on another train of the same company, within the meaning of the terms 'separate branch or department,' as those terms are employed in section 3 of the act of April 2, 1890 (87 Ohio Laws, p. 150).

"(2) An engineer in charge of a locomotive, who has authority to direct or control a fireman serving on the same locomotive, is a superior within the meaning of the above-named section.

"(3) Whether an engineer or other employé of a railroad company has authority to direct or control other employés of the same company is a question of fact to be determined in each case. This may be done, however, either by proof of express authority, or by showing the exercise of such authority to be customary, or according to the usual course of conducting the business of the particular company interested, or of railroads generally."

In the opinion, Judge Bradbury presents the reasoning upon which these conclusions were founded, in these words:

"The relation of superior and subordinate, however, did not actually exist between Margrat and the engineer by whose negligence he was injured; for, as we have seen, the latter had no authority to command or direct the former in discharging his duties. But the statute, we think, declares that relation to exist, as matter of law, for the purpose of charging the company, if the engineer was the superior of—that is, was authorized to command or direct—any co-employé whatever, and Margrat was without such authority. They must have been in 'separate' branches or departments of the company's service, for the section so declares. The section, however, makes no attempt to define the terms 'departments' and 'branches,' but these terms should not be limited so as to embrace merely those large divisions created for convenience in administering the affairs of the company. On the contrary, it is more reasonable to suppose that they relate to those minute ones which concern the daily duties of the employés. Those terms are general and comprehensive, but, as the legislature discloses no purpose, in this connection, to regulate the internal affairs of a railway company, it should not be presumed to refer to divisions of its business made for its own ends; and, if not to such divisions, what divisions could it mean, but those which divide up the employés while in actual service? The section expressly declares a purpose to enlarge the remedy of the employés for accidents occurring in the course of their employment. This declaration emphasizes the presumption that the terms under consideration should be construed as referring to conditions affecting them, rather than to those which are established by the company for its own purposes. Without pursuing the matter further, we hold that, under the section of the statute under consideration, an engineer on one train is in a separate branch of the company's service from that of a brakeman of another train belonging to the same company."

The facts of the case were these: The train to which the plaintiff brakeman belonged was being coupled to two cars in the yard of the railroad company at Deshler, Ohio. Whilst he was proceeding along a parallel track to reach the place of coupling, he was negligently run into by a locomotive manned by an engineer and fireman. Whether the plaintiff's train had come in off the road, and it was the intention for it, after the coupling was made, to proceed on its journey, or it was a train in charge of a switching crew, and being switched in the yard, does not clearly appear. It is stated, however, that it was part of plaintiff's duties to help switch cars in defendant's yard at Deshler. Nor does it clearly appear that the locomotive which

ran plaintiff down belonged to the yard, or had connection with any other cars.

Counsel for plaintiff in error contend that the second clause of said statutory provision does not apply to this case, for two reasons: One is that the employé who is thereby made the constructive superior, and hence not fellow servant, of certain other employés, is one who is the actual superior of more than a single employé, 'and in this case Bowker was the actual superior of but a single employé, to wit, his fireman. The ground upon which they base this construction of the clause is in the use therein of the plural word "employés." And it was in view thereof that instruction No. 10 was asked. This construction is undoubtedly too narrow, but, whether so or not, there can be no question but that the Margrat Case has settled that the clause may apply to an actual superior of a single employé. For in that case the engineer who was adjudged not to be the fellow servant of the injured brakeman was the actual superior of a single employé, to wit, his fireman. Hence that instruction was properly refused.

The other reason assigned for the nonapplicability of said clause to this case is that Bowker and decedent were not in separate branches or departments, within the meaning thereof, but in the same branch or department, to wit, the yard. And it was in view of this construction that instruction No. 1 was asked. The Margrat Case is against this construction, also. Counsel for plaintiff in error suggest that it is not, because it had relation to two trains out on the road, and not to two trains in a yard being handled by two switching crews, as here. The position is that in such a case the consociation between the two crews is so much greater than in the case of two road trains that they should be held to be not in separate branches or departments, but in the same branch or department. But it appears from the facts of the case that the accident involved therein happened in the yard of the railroad company at Deshler, Ohio, and the probability is that the two trains were being handled by two yard crews, or at least two crews whose duty it was to do yard service. This, though, is not entirely clear. The matter, however, is put beyond question by the decision of the supreme court of Ohio in the case of Railway Co. v. Munger, 61 N. E. 1147, rendered May 21, 1901, without opinion, the record in which has been furnished us by counsel for defendant in error. There two trains were being handled by two switching crews in the yard of the railroad company at Ashtabula, Ohio, and the brakeman on one was injured through the negligence of the conductor in charge of the other. The plaintiff recovered in the lower court, and that judgment was affirmed by the supreme court. The trial court was requested by the defendant to instruct the jury that "the two crews and all the members thereof were engaged and consociated in the same department and branch of duty, work, and line of employment, and that each member of the one crew was the fellow servant of each member of the other crew." It refused to so instruct the jury, and charged them that the two trains "were separate branches of the executive force" of the railway company.

There is, however, another possible view of the clause in question, which has not been suggested, but which, if a true one, may render it inapplicable to this case. It is that the actual superior to whom it applies, and whom it makes the constructive superior, and hence not fellow servant, of certain employés of whom he is not the actual superior, is one who is the actual superior of all the employés other than htimself in the branch or department to which he belongs, and hence the head of that branch or department. Reasons for such a view may be found in the contrast between the language used in the two clauses of the statute in describing the actual superior to which they respectively apply, that in the first applying to an actual superior of one or more employés, without reference to the question as to whether they are all the employés, other than himself, in the branch or department to which he belongs; in the description of the employés covered by the actual superiority of the actual superior to whom the second clause applies, as having relation to a separate branch or department; in the effect of the insertion of the definite article, "the," before the word "employés," in said clause; in the omission to make the constructive superiority cover employés in the same branch or department, not covered by the actual superiority; and in the probability that the origin of the statute was to change the law as adjudged in the case of Railroad Co. v. Devinney, 17 Ohio St. 198, where it was held that the conductor of one train was the fellow servant of a brakeman on another train. According to such a view of the statute, it may apply to an actual superior of a single employé, provided such single employé is the only employé other than himself in the branch or department to which the actual superior belongs. In such a case the plural word, "employés," would apply to him, for, though but one, he represents the whole. And it may be claimed that this view of the statute is not foreclosed by the decisions in the Margrat and Munger Cases. Certainly not by the latter, because there the actual superior, who was held not to be the fellow servant, of the injured brakeman, was the conductor of the other train, who had charge of all the employés on it, and hence was the head of that branch or department. In the Margrat Case the effect of the decision was that the engineer of an engine running light is an actual superior, within the clause in question. This is hardly a decision that the engineer on an engine in a train in charge of a conductor is such an actual superior, either because said clause is not limited to an actual superior who is the head of the branch or department to which he belongs, or because an engine in such a condition is a separate branch or department by itself. There is, though, language used in the syllabus and opinion that may be construed to mean that an engineer, even in such a case, is within the clause. But to this it may be said, as was said by Judge Taft in Narramore v. Railway Co., 37 C. C. A. 505, 96 Fed. 298, 305, 48 L. R. A. 68, "The syllabus and opinion are, of course, to be restrained to the facts."

But we will not determine in this case whether this view of the clause in question is the correct one, or the effect upon it of the decision in the Margrat Case. It appears from the facts herein that

the conductor was not on Bowker's train at the time of the collision, having left it as it went east on the south track past the depot, and entered the depot. Owing to this fact, it is possible that, according to the usages or rules of the railroad company, Bowker, as engineer, acquired charge of the train and all employés on it, pro tempore, just as in the case of Railway Co. v. Howe, 3 C. C. A. 121, 52 Fed. 362, upon the breaking of a freight train in two, according to the rules of the railroad company, the engineer became conductor, pro tempore, of the forward part of the train, and hence was an actual superior, within the meaning of said clause, even according to said view. The evidence, however, did not disclose whether there was any such usage or rule. Besides, as hereinafter set forth, the decedent, Kane, was guilty of such contributory negligence as to preclude any right of recovery for his death. In view of these considerations, we do not deem it necessary to dispose of those questions herein, or to pass upon the further question, dependent upon them, as to whether instruction No. 1 should have been given. We have, however, felt it incumbent upon us to direct attention to this alleged error, and the questions upon which it depends, so as to avoid any misconstruction as to the bearing of this case upon the applicability of said clause to an engineer on an engine in a train of which he is not in charge.

2. The plaintiff in error requested the lower court to give to the jury the following instruction, to wit:

"No. 6. The court charges you that if plaintiff's decedent, Kane, for the purpose of cleaning his engine at the time when he was not required by the company to clean it, voluntarily violated the rule of the defendant company requiring him to assist the engineer in watching for signals and obstructions, and if you also find that, but for such violation of the rule of the company, he would not have been injured, the plaintiff cannot recover in this case, and you should return a verdict in favor of the defendant railroad company."

This it refused to do. Its ruling was duly excepted to, and is assigned as error.

This court, in the case of Railway Co. v. Craig, 19 C. C. A. 631, 73 Fed. 642,—Id., 25 C. C. A. 585, 80 Fed. 488,—which was twice before it on writ of error, had occasion to consider and determine the effect, on the right of a servant to recover for an injury sustained by him whilst engaged in the master's business, of the fact that at the time of his injury he was violating a rule prescribed by the master for the transaction of his business. The particular rule which it was claimed had been violated in that case was one prohibiting employés from entering between cars, whilst in motion, to uncouple them. On the first hearing the question involved was as to whether the alleged violation could be said to have caused or contributed to the injury. On the second, two questions were involved: One was whether the rule had been abrogated by an habitual disregard thereof to the knowledge of the master's superintendent; the other, whether the violation of the rule, in and of itself, if it caused or contributed to the injury, was sufficient to defeat the servant's right to recover. The lower court, on the second trial, had instructed the jury as to this latter question in these words:

"He might violate the rule itself, strictly construed, and not be negligent; that is, the rule providing that no one should pass in between cars while in motion. He might violate that rule by stepping in between cars when going at the rate of two miles an hour, under such circumstances that it would be a violation of the rule, and yet not be negligence."

And had refused to give this charge:

"That if Craig violated the rules, and their observance would have prevented the injury, or if he had observed the rules the injury would not have occurred, then he is not entitled to recover."

These rulings this court held to be erroneous. In delivering the opinion of the court on this point, Judge Clark said:

"It may be well, in considering the separate parts of the entire paragraph, to refer to certain .rules now well settled, and no longer the subject of question. It is, for example, recognized that a duty rests upon a railroad company, in the operation of a complex and dangerous business, to make rules and regulations for the government of its servants and employés. Railroad Co. v. Camp, 31 U. S. App. 213, 13 C. C. A. 233, 65 Fed. 952; Railway Co. v. Dye, 16 C. C. A. 604, 70 Fed. 24; Wood, Mast. & S. 403; 3 Wood, R. R. 382; Reagan v. Railway Co., 93 Mo. 348, 6 S. W. 371, 3 Am. St. Rep. 542. And a company being under a duty to make reasonable rules, it needs hardly to be said that there no longer exists any question of its right and power to do so, and that a servant accepting employment with knowledge of such rules, and especially when his attention is directed thereto, is under obligation to fully conform to such rules when and so long as they are really maintained in force, and that a servant or employé failing or refusing to observe such rules takes upon himself the risk of the consequences of such disobedience, and is, as matter of law, guilty of negligence which defeats his right to hold the master liable for an injury of which such negligence is the proximate cause. Russell v. Railroad Co. (C. C.) 47 Fed. 204; Brooks v. Railroad Co. (C. C.) 47 Fed. 687; Railroad Co. v. Reesman, 19 U. S. App. 596, 9 C. C. A. 20, 60 Fed. 370; Railway Co. v. Dye, 16 C. C. A. 604, 70 Fed. 24; Railroad Co. v. Finley, 25 U. S. App. 16, 12 C. C. A. 595, 63 Fed. 228; Gleason v. Railway Co., 19 C. C. A. 636, 73 Fed. 647, 43 U. S. App. 101; Railway Co. v. Wilson, 88 Tenn. 316, 12 S. W. 720; Railroad v. Reagan, 96 Tenn. 128, 33 S. W. 1050. If negligence of the servant in violating a reasonable rule is either the sole proximate cause of an injury, or if, without being the sole proximate cause, the servant's negligence concur with that of the master in producing the injury, the master is exonerated from liability, and the servant is without remedy. Railway Co. v. Hoedling's Adm'r, 10 U. S. App. 422, 3 C. C. A. 429, 53 Fed. 61; Railroad Co. v. Howe, 6 U. S. App. 172, 3 C. C. A. 121, 52 Fed. 362."

And again:

"In the ordinary case of this character the questions of negligence and contributory negligence, as known to the common law, are questions of fact for the jury. In such a case, whether the servant's mode of performing his duties is negligent, as well as whether such negligence is the proximate cause of the injury, are both questions of fact to be submitted to the jury under all the circumstances of the particular case; whereas, in a case like this, with a rule in force, the violation of the rule by the servant is, as a matter of law, negligence, as has often been declared, and the only question left open and to be submitted to the jury, as one of fact, is whether or not such negligence was the proximate cause of the injury, or concurred with the negligence of the master in producing the injury."

Such being the law as to the effect of the violation of a rule, if its violation causes or contributes to the injury complained of, it follows necessarily that if decedent, Kane, at the time of his injury, was violating that portion of the rule of plaintiff in error referred to

in the statement preceding this opinion, which requires a fireman to assist his engineer in watching for signals and obstructions, and such violation caused or contributed to his injury, his personal representative was not entitled to recover herein. That decedent at the time of his injury was acting in violation of such portion of said rule is clear. It is certain that he was then engaged in cleaning the number of the engine on the front end of the boiler, below the headlight, with his back to the east and his front to the west. It was alleged in the petition that he had gone out on the "front of his engine for the purpose of cleaning the number of said engine, which number is just below the headlight," and whilst "at work cleaning the number of said engine" the collision took place, catching "plaintiff's decedent between said car and engine, crushing and mangling him to death," and there was nothing in the evidence to impugn the truth of these statements. On the contrary, it all went to confirm them. The engineer on decedent's train testified that the last he saw of him was out on the running board, opposite the bell, with a piece of waste in his hand. A bystander testified that he did not know whether the gondola "hit him or the jerk knocked him, but he fell in between, and it ketched him," and that he "thought he was wiping something"; he "couldn't exactly say." And trainmen and bystanders testified that he was found on top of the draft timbers of the gondola, under the body, with his head towards the engine and feet from it, and crushed through the back.

The court, in its charge to the jury, submitted to it the question whether decedent's action was a violation of that portion of said rule which requires firemen to "clean and polish their locomotives at the end of each trip," intimating to them that, in its opinion, it was not; and counsel for defendant in error earnestly contend the same thing. The point made by the court in support of this position was that this portion of the rule has no application to firemen working upon yard engines, because it presupposes that the locomotives to which it does apply take trips, and an engine at work in a yard does not do this. Possibly this point is well taken, and possibly, also, it is not. Each day's work of such an engine may be regarded as a trip; when it goes out to work being the beginning of the trip; and when it comes in, the end thereof. But though, in this view of the matter, it may be properly said that this portion of the rule has application, it would seem that the object of it is to secure the cleaning and polishing of each locomotive at frequent and regular intervals,—the time fixed upon being the end of each trip it makes,—and not to prohibit such cleaning and polishing at other times. As, for instance, it is hardly to be said that doing this at the beginning of each trip, or at intermediate stations, or on side tracks, when the locomotive is not in motion, is prohibited. And if not at other times when not in motion, so not at other times when in motion. We are therefore inclined to the view taken by the lower court, that decedent's action was not a violation of this portion of the rule, though not for the same reason, and we do not understand counsel for plaintiff in error to be contending that it was. But it does not follow from this that his action was not a violation of that portion of the rule which required him

to assist in watching for signals and obstructions. It must be regarded, in view of the absence of permission to clean and polish at other times than at the end of each trip, that it is a violation thereof to be so doing when on the road,—certainly when the engine is in motion. A fireman is required by said rule to do several things when his locomotive is on the road. Primarily, he is required to do that which will enable the engine to run, to wit, fire, water, and oil; secondarily, that which will enable it to run efficiently and without accident,—to watch for signals and obstructions. When not occupied with the former, it is his duty to be doing the latter, and doing anything that interferes with its performance is a violation of that portion of said rule. Nowhere is there greater necessity for the efficient performance of this duty than in a yard, where there is much more shifting and making of couplings and uncouplings, and more likelihood of running into something—other engines or cars or individuals—or being run into. There can, therefore, be no question but that decedent was violating this portion of said rule at the time of his injury. It would seem to be certain, further, that, even if to any extent, whilst engaged in cleaning the number of the engine, he was watching for signals and obstructions,—a matter, however, of very great improbability, if not impossibility, and, at best, of pure speculation, without anything in the facts proven to justify an inference that he was,—he was not in his proper place. That place was in the cab, on the left-hand side, where he could more readily catch signals and observe obstructions, and more promptly and correctly communicate information received to the engineer. That such was his proper place when not engaged in the performance of a primary duty was proven by decedent's engineer, and is a matter of common knowledge. The requirement that he should be there when not so employed, as well as that he should promptly and correctly communicate the information received to the engineer, may be said to be implied elements in that portion of the rule providing that he should assist the engineer in watching for signals and obstructions. But whether so or not, it was his duty to perform the duty so required from that vantage point. This he was not doing at the time of the collision. And, in addition to this, irrespective of the question as to whether his being out on the front of the engine was a breach of such a duty, and as to whether he was violating the requirement to assist the engineer in watching for signals and obstructions, it would seem that it was negligence for the decedent to be where he was, because of the great danger of that position, and the absence of reasonable occasion for his being there. In the cases of Railroad Co. v. Jones, 95 U. S. 439, 24 L. Ed. 506, and Kresanowski v. Railroad Co. (C. C.) 18 Fed. 229, 5 McCrary, 528, laborers had been injured whilst riding upon the front of engines. In the first case a box car had been provided for plaintiff and other laborers to ride in, and he chose to ride on the engine. He was injured by a collision between his train and cars upon the track. Mr. Justice Swayne, in alluding to the place where plaintiff was riding, said that it was "obviously a place of peril, especially in case of collision." In the other case there was no room for the plaintiff to ride, save on that

part of the engine, where he was injured by a collision between the engine he was riding on and another one. Concerning the place where plaintiff was riding, Judge Shiras said:

"I think it is apparent to every one—it cannot be questioned—that a person placing himself upon the pilot of an engine certainly puts himself in a very dangerous position. There can be no more dangerous one to be thought of, upon a train or upon a locomotive. It is apparent to every one that it is a place that is exposed to the very greatest danger. In case of any accident, there is scarcely any protection at all to prevent the party from being thrown off from the locomotive. It is not a place gotten up or intended to be used for the purpose of persons riding upon, and in case of collision, where the collision comes from the front part of the engine, it is the place, of all others, that is exposed to the greatest danger."

In the case of Railroad Co. v. Egeland, 163 U. S. 93, 16 Sup. Ct. 975, 41 L. Ed. 82, Mr. Justice Peckham, in referring to these two cases, said:

"The persons injured in those cases were seated, in the first case, on the pilot of the engine, and, in the other, on the front beam of the engine, with his feet over the pilot. The positions were most dangerous, and the danger was plain and obvious at the first sight. No other place on either train was as dangerous, and yet each of the plaintiffs substantially selected his position as a fit and proper place to ride in. The great and obvious danger of the positions in which the plaintiffs voluntarily placed themselves is the material and controlling fact upon which the cases were decided."

And again:

"Both these cases * * * stand on the same ground, which is the exceedingly dangerous position taken by the plaintiffs upon the engines, the danger of which was open and obvious to every one."

There is this difference between this case and those two. Here the decedent was at work. There one plaintiff was riding from, and the other to, work. Besides, it may be said that riding on the front end of an engine, with nothing in front of it, is more dangerous than so riding with cars in front of it, as here. But as we have seen, the work was not required or even authorized, and his being there was therefore entirely without reasonable occasion for it. And though riding in such a place may be more dangerous when there are no cars in front of the engine than when there are cars there, in the latter instance it is so dangerous that it must be regarded that it is negligence for one to be there under such circumstances. In the event of a collision, there is no place so dangerous for one to be as between cars, or between a car and an engine, as here, except it be on the front of an engine, with no cars in front of it. Counsel for defendant in error contends that, because decedent's standing on the beam in front of the engine did not place him entirely between the engine and gondola, and the distance from where he was standing to the gondola was as much as 4½ feet, he was not in a dangerous place. But we do not see that these two facts render the place where he was standing so much less dangerous than it would have been had he been entirely between the two, and they were closer together, as to make his standing there not negligence. It is so uncertain what will happen in the event of a collision that the question as to negligence in voluntarily and without reasonable occasion being be-

tween cars, or between an engine and car, should not be affected by the mere distance between the two, or the extent that the party injured is between them. Again, counsel for defendant in error urge that it was not negligence for decedent to be there, because he was not bound to anticipate Bowker's negligence, through which the collision came about. It is never negligence, they say, for one not to anticipate negligence in anybody else. There is, however, no such general rule of law or prudent conduct. There are instances where, as a matter of law, it is negligence not to anticipate negligence in others. As, for instance, it is well settled in the federal courts that it is negligence for a highway traveler not to anticipate failure on part of an engineer to give appropriate signals of approach of his train to a highway crossing. He has no right not to look or listen because he has heard no such signals. Mr. Justice Field, in the case of Railroad Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542, said:

"The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precaution for her safety. Negligence of the company's employés in these particulars was no excuse for negligence on her part. She was bound to listen or look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into a place of danger."

And it is hard to understand how it was held in the foregoing cases that it was negligence for an employé to ride on the front of an engine, except upon the idea that he was bound to anticipate a collision from negligence or mishap. Mr. Beach, in his work on Contributory Negligence (2d Ed., §§ 38, 39), treats of this matter, and his conclusion is announced in these words:

"The rule that a plaintiff must exercise ordinary care under the circumstances in order to escape the imputation of contributory negligence will more often require him to act upon a presumption of the probable or possible negligence or wrongdoing of others than it will justify him in acting upon the contrary presumption. This, in the author's judgment, is a view that commends itself to the common experience and common sense of the average mankind, though it has found little sanction at the hands of the judges."

It seems to be equally clear that decedent's being out on the front of the engine, instead of in the cab, if not his violation of said portion of the rule requiring him to assist in watching for signals and obstructions, concurred with Bowker's negligence in bringing about, and therefore contributed to, his injury. There was room in the evidence for the inference that if decedent had been in the cab, watching for signals and obstructions, the approach of Bowker's train might have been observed, and he warned through the whistle on decedent's train, or the course of the latter might have been reversed, and in either or both of these ways the collision might have been prevented. The engineer was engaged at the time in looking east for a signal that his train had cleared the switch, and, had decedent been on the lookout from the cab whilst this signal was being looked for, one or the other of them could have been looking west. It is certain, however, that if decedent had been in the cab, and not on the front of the engine, he would not have been hurt, as the cab and the engineer in it sustained no injury. In the Jones Case, supra, Mr. Justice Swayne said:

"All those in the box car, where he should have been, were uninjured. He would have escaped, also, if he had been there. His injury was due to his own recklessness and folly. He was himself the author of his misfortune. This is shown with as near an approach to a demonstration as anything short of mathematics will permit."

And in the Egeland Case, supra, Mr. Justice Peckham, in referring to the effect of the dangerous position occupied by the parties injured in the Jones and Kresanowski Cases, said:

"It was therefore held that the necessary inference or legal conclusions to be drawn from these uncontradicted facts was that the plaintiffs, in their choice of positions on the engines, were guilty of negligence directly contributing to the injury."

The facts of this case, therefore, were such that the defendant might properly have asked a peremptory instruction on the ground of decedent's breach of duty in being out on the front of the engine, instead of in the cab, if not for his negligence in being there without reasonable occasion for it, irrespective of the question as to whether it was his duty to be in the cab. It was certainly entitled to have the question submitted to the jury as to whether said portion of the rule had been violated by decedent, and the violation thereof had contributed to his injury. Of course, if the evidence had showed that said portion of the rule had been abrogated to the extent of permitting the cleaning of engines under the circumstances of this case, then plaintiff in error would not have been entitled to have it submitted to the jury whether decedent's action was a violation of said portion of the rule, and contributed to his injury. An attempt was made to show that it had been, to that extent, abrogated. The attempt, however, fell short of coming up to the requirement as to what is necessary to show an abrogation. The conductor of Bowker's train and the engineer of decedent's train both testified that firemen cleaned their engines in the yard at Niles when in motion, as well as when standing. But knowledge thereof was not brought home to any employé with whose knowledge plaintiff in error was chargeable, nor was the habit or custom of so doing proven to such an extent as that it might be inferred that such employé had such knowledge. On the contrary, the superintendent of the division of plaintiff in error's railroad, in which the Niles yard was located, introduced as a witness by plaintiff in error, testified positively that he never knew or heard, before the trial of this case, that any fireman on his division of the road had engaged in cleaning his engine whilst in motion. This case, therefore, does not come within the case of Railway Co. v. Craig, 25 C. C. A. 585, 80 Fed. 488, where this court held that habitual disregard of a rule by employés, to the knowledge of the superintendent, amounts to an abrogation of the rule. It comes within the cases of Russell v. Railroad Co. (C. C.) 47 Fed. 204, and Railroad Co. v. Reesman, 9 C. C. A. 20, 60 Fed. 370, 23 L. R. A. 768, where it was held that prior disregard of a rule more or less habitual, even though to the knowledge of a conductor, did not amount to its abrogation. There was therefore nothing in this consideration to deprive plaintiff in error of the right to have said instruction given to the jury. And it was error to refuse to give it, unless it was substantially embodied in the charge that was given.

The lower court instructed the jury at three separate times. The first was the usual charge at the close of the evidence. The other two were upon recall of the jury from their room after the submission of the cause to them. On the last occasion they were simply instructed as to the burden of proof on the question of contributory negligence, and no further reference need to be made to it. Possibly the true effect of what the court said in its original charge, and on the first recall, upon the subject of decedent's contributory negligence, cannot be had without quoting it in full. But we believe we can do justice to it without so quoting it, and its length is such that to quote it in full would extend the opinion too greatly. As before stated, the court submitted the question as to whether decedent's action in cleaning the number on his engine was in violation of that portion of the rule which required firemen to clean and polish their locomotives at the end of each trip; intimating, however, that, in its opinion, for the reason heretofore stated, it was not. It not only intimated this, but also that there was some doubt as to whether decedent was out on the front of the engine, cleaning its number, at the time of the collision. After doing so, however, it added:

"I am willing to say to you that, both parties having assumed that that was his business there, you may try this case upon the theory that that was the purpose for which he was out on the front of the engine at the time this death occurred."

Indeed, in the course of the charge expressions were used indicating that, in the view of the court at that time, decedent might not have been on the front of the engine at all, but may have been on the running board. Such intimations, as we have seen, were contrary to the distinct allegations of the petition and all legitimate inferences to be drawn from the testimony in the case. But though the question as to the violation of this portion of the rule was submitted to the jury, they were not told, at least in the original charge, that if they believed from all the evidence that it had been violated, and the violation thereof contributed to the injury, plaintiff could not recover. On the contrary, they were there told that, though they might so believe, yet if they further believed that, under "all the" or "the particular facts and circumstances of the case," decedent's action was that of a prudent and careful man, plaintiff was entitled to recover. This was emphasized by being repeated a number of times. One quotation from the original charge is sufficient to present the court's instruction to the jury therein on this point.

"If you find from all the circumstances in the case, and from this proof that has been given to you by the superintendent and everybody else about the management of these trains, and how these operatives were controlled, and also that he was under an obligation and rule not to clean his engine until he had got back to the engine house, or until the engine had gone off duty, so to speak, and that he was on the running board and polishing the engine under circumstances where he was not justified by the rule, and when he was not justified by the particular facts and circumstances in this case, then he cannot recover, under the rule I have given you in reference to contributory negligence. But if you find from all the facts and circumstances that this rule does not apply to that situation, and that, whether it did apply or not, there were certain facts and particular facts and circumstances that then and there existed which justified a prudent man, in the

discharge of his duties, acting under the rule of ordinary care, that he was doing that which was prudent and careful, he would still be entitled to recover, and it is a question for you, gentlemen of the jury, to determine, as it was in the other case, whether he was guilty of any such negligence, under the rules and under the management and control of this train, as an ordinarily prudent fireman would not do."

The court also submitted to the jury the question as to whether decedent's action was a violation of that portion of the rule which requires firemen to assist the enginemen in watching for signals and obstructions. It did so in the original charge in these words:

"There is another branch of this rule to which some of these instructions and much of the argument has been directed, and that is that he shall assist the engineman in watching for signals and obstructions. It is conceded by his learned counsel, who have argued this case for him, or for the plaintiff, rather, that he was bound by that rule; that that was his duty,—to look out; help the engineman to look out; but they say it was just as necessary for him to look in the easterly direction as in the other direction, and he might have been engaged in that duty while he was cleaning the engine and polishing it,—might have been looking out in that direction. We have no proof to show that he was directed to go there for that purpose, or that there were any circumstances that made it necessary for him to go for that purpose; and yet, it might have been, for a watchful, prudent man, as his counsel say,—it might have been that he felt he could discharge that duty of keeping a lookout for obstructions as well there as elsewhere. And then, again, he might have felt that the situation there was such that there was no reason for him to be looking out for any train running back against him under the particular circumstances of that case. Was the situation such that he might expect that a train would be coming back against him, when he saw that Bowker's train had gone across, and was to stop at the crossing up there until he should receive a signal to come back? The same rule in determining his prudence and carefulness in respect to that obligation of the rule applies as in respect to the other. He was bound to do that which a prudent and careful man would do, charged with that duty and that obligation. And it is a question for you to determine, on all the facts and circumstances in this case, as it appears in that particular situation, and say whether or not he was doing that which an ordinarily prudent and careful fireman, charged with the duties of a fireman, under those particular circumstances, would do. If he was, he is entitled to recover. If he was acting imprudently and without due and ordinary care, under those circumstances, he is not. And that is a question for you to decide upon this proof, as you have had it before you from the witnesses."

The intimation in said portion of said charge that it might be prudent for a fireman, under the circumstances of this case, to watch for signals and obstructions, standing on the front of his engine, and that the jury might infer that decedent was in fact so doing whilst engaged in cleaning the engine, cannot be approved. Certainly, in so far as it and that part of the charge which related to the other portion of the rule left it to the jury to determine whether decedent's action was prudent and careful, even though it may have been in violation of the rule, it was erroneous. They contained the vice of the instruction disapproved by this court in the case of Railway Co. v. Craig, supra, on the last hearing herein. They left it to the jury to determine whether the violation of said portions of the rule was negligence, when the jury should have been told that such action was negligence, as a matter of law, and that, therefore, if said portions of said rule had been violated, and the violation thereof contributed to the injury, they should find for the defendant. The first

recall was for the purpose, as the jury were told, to "correct some wrong impressions" that had been made by the original charge. Possibly it was the intention of the court upon the recall to withdraw the position embodied in the original charge,—that plaintiff was entitled to recover, notwithstanding decedent's action was in violation of either portion of said rule, if they believed that it was that of an ordinarily prudent and careful man,—and to tell them, if it was such a violation, it was negligence, as a matter of law, and no recovery could be had. If such was the purpose of the recall, the further instructions given did not correct those originally given in the above particular. At least, they were so ambiguous that it is not reasonable to believe that they succeeded in removing the wrong impressions made by those given at the first. One quotation from the additional charge will make this good. It is in these words:

"You are to look to all the duties that he had to perform, and if you find he was not there for the purpose of looking out for signals and looking out for obstructions, and you find he was there for the purpose of cleaning or polishing up his engine, then it is a question for you to determine, as it was before, whether or not, under this rule, he was properly and prudently there, or whether he was there in violation of this rule. And if you find he was there in violation of this rule about cleaning the engine, then he cannot recover. If you find he was there properly and prudently under the rule, and that he might do it under the rule, or, rather, that the rule did not apply, and he might do that, and it was according to the ordinary custom and habit of the fireman on this road to clean the engine under those circumstances, it is for you to say whether he was prudently there. If he was following the rule, or ordinary custom and habit of firemen to do that, where the rule did not apply, then he would not be guilty of contributory negligence."

It is evident, therefore, that the idea contained in instruction No. 6 asked for by defendant was not embodied in the charges to the jury. That being so, it was error for the court to refuse to give it.

3. The defendant excepted to certain portions of the charge to the jury originally and upon the first recall, and these portions thereof are assigned as error. Some of them are contained in the portions of said charges already quoted. So far as not there contained, they express similar ideas, or ideas which we have already commented on and criticised. In making these quotations, and commenting upon them and said ideas, we have had in view that the words conveying them were assigned as error, as well as their bearing upon the question as to whether there was error in refusing instruction No. 6. A consideration of them in connection with what we have already said is all that is sufficient to show to what extent and why they are erroneous.

4. Bowker was summoned as a witness at the trial by both parties, and attended in pursuance to the summons. He was not put upon the stand by either party, and did not testify in the case. The court instructed the jury upon this matter in these words:

"Much comment has been made by the plaintiff's counsel upon the fact that Bowker hasn't been here to testify about that circumstance; that he hasn't been put upon the stand by the defendant company to explain how it was that he came to move that train under the circumstances that he did. On the other hand, the defendant says that Bowker was under the subpœna of the plaintiff, and that the plaintiffs might have put him on the stand

themselves, as they had him subpoenaed here, to have shown how it was, if they desired to do so. The rule of law upon that subject is this: Where it appears that there is in the possession and under the control of one of the parties evidence which would explain or which would in any way mitigate the proof that has been offered by the other side, and that testimony is not introduced, and no sufficient and satisfactory reason is given for not introducing it,—no good ground is shown for not introducing the witness,— the law presumes that the testimony of that witness, if produced, would operate against the party whose duty it would be to offer it."

And again it charged:

"On the other hand, where a party, the other side, has control of the testimony, or has the power to introduce the testimony, and does not do so, the presumption is to be taken most strongly against them,—that, if that testimony was offered on the witness stand, it would be against them, or it would be seen to tend to prove the issue against them."

Other language in the same line was used, but the above alone was excepted to, and has been assigned as error. We think it clear that the court erred in so charging the jury. Scovill v. Baldwin, 27 Conn. 316; Bleeker v. Johnson, 69 N. Y. 309; Arbuckle v. Templeton, 65 Vt. 205, 25 Atl. 1095; Crawford v. State, 112 Ala. 1, 21 South. 214; 1 Greenl. Ev. (16th Ed.) § 1956; Whart. Ev. § 1207. Counsel for defendant in error do not contend otherwise. Their position is that the error was not prejudicial, because plaintiff was entitled to a peremptory instruction to the jury to find that Bowker had been guilty of negligence. Counsel for plaintiff in error do not dispute that plaintiff was entitled to such an instruction, but contend that the instruction complained of was prejudicial, because it placed defendant in the attitude before the jury of suppressing the truth. Inasmuch as this case has to be reversed upon the other grounds stated, it is not necessary to determine this question.

For the reasons stated, the judgment of the lower court is reversed, and the cause remanded for proceedings consistent with this opinion.