### KANE v. ERIE R. CO.

(Circuit Court of Appeals, Sixth Circuit. January 19, 1906.)

#### No. 1,447.

1. MASTER AND SERVANT—RAILROADS—FELLOW SERVANTS UNDER OHIO STATUTES.

87 Ohio Laws, p. 150, § 3, in providing that every person in the employ of a railroad company "having charge or control of employés in any separate branch or department shall be held to be the superior and not fellow servant of employés in any other branch or department who have no power to direct or control in the branch or department in which they are employed," divides all of the employés of a railroad company, with respect to those working in separate branches or departments constructively, into superiors and subordinates; superiors being all those having authority over any co-employé whatever, and subordinates those having none. And under the decisions of the Supreme Court of the state that separate trains are separate "branches or departments," within the meaning of the statute, a company is liable for the injury or death of a fireman through the negligence of the engineer of another train having authority over his own fireman, although he is himself subject to the control of the conductor of his train.

[Ed. Note.—For cases in point see vol. 34, Cent. Dig. Master and Servant, § 508.

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

2. SAME—ACTION FOR DEATH OF FIREMAN—CONTRIBUTORY NEGLIGENCE.

Plaintiff's intestate, who was a fireman on an engine on defendant's railroad, was killed while his train was in the yards of the company, as the result of a collision alleged to have been caused by the negligence of the engineer of another train. Deceased was at the time standing on the running board on the front of his engine cleaning the headlight or number plate, and the engine was backing very slowly, drawing a number of cars after it. It was a part of his duty to clean the engine, and it was clearly shown that it was the custom of firemen on defendant's road to do so during the day, sometimes while the engines were standing still, and sometimes while they were in motion, and that such custom was known to and sanctioned by the company, although a rule provided that firemen should clean the engines "at the end of each trip." *Held* that, in view of such general custom, which in effect abrogated the rule, the deceased could not be said as matter of law to have been guilty of contributory negligence in being in the position where he was at the time of the collision, but that such question was one for the jury.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

See 133 Fed. 681.

George F. Arrel and T. McNamara, for plaintiff in error.
John H. Clarke, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was a suit to recover damages for the wrongful death of the plaintiff's intestate, Thomas M. Kane, a fireman on one of two trains which were being switched in the yards of the defendant railway company at Niles, Ohio. Kane was killed in a collision charged to have resulted from the negligence of one Bowker, the engineer of the other train. Bowker's train had a conductor, although, at the time of the collision, he was not on the train, but in the telegraph office. The suit could not have been maintained under the Ohio law as it stood prior to the passage of the act of April 2, 1890 (87 Ohio Laws, p. 149), for then the negligence relied on would have been held that of a fellow servant, for which the company was not liable. P., Ft. W. & C. Ry. Co. v. Devinney, 17 Ohio St. 198. It is therefore based upon this act, and has involved both its constitutionality and construction.

This makes the third time the case has been before this court. On the first trial, a judgment was recovered for the plaintiff, which was reversed by this court for the reasons stated in the opinion delivered by Judge Cochran (118 Fed. 223, 55 C. C. A. 129), being, in brief, that on the record it appeared that Kane had been guilty of contributory negligence. The construction and application of the act, while discussed, was left undetermined, awaiting the proof on the next trial. On the second trial, objection to the introduction of any testimony was sustained, on the ground that the act violates the Constitution of Ohio. This judgment we reversed, holding the act to be constitutional, and remanded the case for a third trial. 133 Fed. 681, 67 C. C. A. 653, 68 L. R. A. 788. On the last trial, Judge Cochran, who sat below, directed a verdict for the defendant on two grounds: First, that the act of April 2, 1890, does not apply, because Bowker, the negligent engineer, while in control of his fireman, was not in charge of all the employés on the train, there being a conductor; and, second, because Kane, the deceased fireman, was guilty of contributory negligence in putting himself in a dangerous place on the engine, in front of the boiler, between it and the gondola car, where he was liable to be caught if a collision occurred. The case is here for a review of these rulings.

1. Prior to the passage of the act of April 2, 1890, the general rule that a railroad company is not responsible to an employé for the negligence of a fellow servant was subject in Ohio to the modification, first announced in the Stevens Case, 20 Ohio, 416, and confirmed in the Keary Case, 3 Ohio St. 201, that, where one employé is put under control of another, and the subordinate, without fault on his part, is injured through the negligence of the superior, while both are acting in the common service, the company is liable. Thus the actual relation of the negligent to the injured employé was held to determine the liability of the company. If the negligent employé was in control of the injured one, the company was deemed liable, because then the

two were not properly fellow servants, but one the superior of the other, and as Judge Ranney said in the Keary Case, 3 Ohio St. 211:

"No service is common that does not admit a common participation, and no servants are fellow servants when one is placed in control over the other."

Recognizing the relation of superior and subordinate as a source of liability, the act under consideration not only gives it statutory force, but broadens the liability of the company by creating as between separate branches or departments a class of constructive superiors and subordinates, who are no longer to be deemed fellow servants. It provides (section 3, p. 150) that in all actions against a railroad company for personal injury or wrongful death, it shall be held, "in addition to the liability now existing by law":

"(1) That every person in the employ of such company, actually having power or authority to direct or control any other employé of such company, is not a fellow servant but superior of such other employé; and

"(2) Also, that every person in the employ of such company having charge or control of employés in any separate branch or department, shall be held to be the superior and not fellow servant of employés in any other branch or department, who have no power to direct or control in the branch or department in which they are employed."

In sustaining the constitutionality of this act, we commented upon the ground of classification thus adopted by the Legislature, and said (133 Fed. 681, 67 C. C. A. 657, 68 L. R. A. 788):

"The exercise of authority by one employé over another is thus made the test. Any employé who exercises authority over another is 'not the fellow servant, but superior,' of such other, and every employé who exercises authority over another in his own branch or department is 'the superior, and not fellow servant,' of an employé in a separate branch or department who exercises no authority there. If the negligent employé is, by virtue of this enactment, the superior and not fellow servant of the injured employé, the latter did not assume the risk of his negligence, and the company is responsible. It is to be observed that the basis of the new classification made by the legislature is none other than that of the old made by the Supreme Court of Ohio. The class is merely broadened by a logical extension of the rule. Under the old, the company was liable for the negligence of one who exercised authority over the employé injured through his negligence (B. & O. R. R. Co. v. Camp, 65 Fed. 952, 13 C. C. A. 233, 243); under the new, it is liable not only for the negligence of one who exercises authority over the employé injured, but of one who, exercising authority in one branch or department, by his negligence causes the injury of an employé in another who exercises no authority there."

But the court below, after a careful analysis of 'the act and the cases under it, reached the conclusion that the constructive class of superiors created by the second clause is limited to employés in charge and control of separate branches and departments; in other words, to be a superior under this clause, the employé must be in charge and control of all employés in his separate branch or department. The possibility of this construction was suggested in the opinion of this court, delivered by Judge Cochran, when the case was first before it, but the question was left undecided. 118 Fed. 223, 55 C. C. A. 134. The question is a nice one, and we regret it has not been directly determined by the Supreme Court of Ohio, the proper tribunal to construe an Ohio statute. We shall give it, however, our best judgment.

The Ohio rule laid down in the Stevens and Keary Cases contemplated a common employment wherein the superior was in charge or control of the subordinate. The rule obviously could not apply in the case of separate branches or departments, whatever the relative position of the employés in such branches or departments. Counting separate trains as separate branches or departments, a brakeman on one train could not be held the subordinate of a conductor on another train, or the latter the superior of the former. Through this resulted what was charged in the dissent to be the injustice of the holding in P., Ft. W. & C. Ry. Co. v. Devinney, 17 Ohio St. 198, where a brakeman, injured by the negligence of the conductor of a separate train, was held to have no right to recover, although he might have maintained an action if he had been hurt through the negligence of the conductor of his own train. The framers of the act may have had in mind this decision.

Coming to the act itself, the meaning of the first clause is plain. It states the Ohio doctrine of superior and subordinate. Every employé actually having authority to direct or control any other employé is not the fellow servant, but superior, of such other employé. To be such superior, it is not necessary that the employé shall have authority to direct or control more than the one employe who is made his subordinate. He does not have to be in control of a branch or department, or represent the company as a vice principal. The simple relation of superior and subordinate between the two is all that is required; but that is required, and, if absent, the rule does not apply. Thus, an engineer is not the superior of a brakeman, when both are employed on the same train, although the engineer is the superior of his fireman, and the brakeman is the superior of no one. Railway Co. v. Lewis, 33 Ohio St. 196; Railway Co. v. Shanower, 70 Ohio St. 166, 71 N. E. 279.

Coming to the second clause, three things are involved, a separate branch or department, a superior therein, and a subordinate in another branch or department. A "branch" or "department" is not defined, but, as held in the Margrat Case, 51 Ohio St. 130, 144, 37 N. E. 11, the terms evidently refer to the small divisions which separate the employés from one another while at work, and in this sense a train is a separate branch or department. A subordinate is an employé who has no power to direct or control in the branch or department in which he is employed. A superior in a separate branch or department, for whose negligence the company is liable, is an employé "having charge or control of employés in any separate branch or department." The statute does not provide, as it easily might have done, that to be a superior the employé must have charge or control of the separate branch or department, or of all the employés therein, but simply of employés therein; that is, as construed in the Margrat Case, of any employé therein. 51 Ohio St. 144, 37 N. E. 11.

Thus the Legislature divided all the employés of a railway company, working in separate branches and departments, into superiors and subordinates; superiors being all those having some authority, and subordinates those having none. The line of distinction is clear. As between separate branches or departments, the company is only liable for the negligence of superiors, and only responsible for injuries done

to subordinates. If a subordinate is given charge or control of a co-employé, he ceases to be a subordinate; but, according to the court below, he does not become a "superior," unless he is given charge or control of all the employés in the particular branch or department. Certainly, under the first clause, he becomes the actual superior of the employé under him, and the company is liable if the latter is injured through his negligence, and we think he also becomes the constructive superior of all employés in separate branches or departments who exercise no authority there. If one of them is hurt through his negligence, in our opinion the company is liable. In this connection, it is to be noted that, while an employé may be the constructive superior of all the subordinates in separate branches and departments, he is not the constructive superior of any subordinate in his own department, and is the actual superior only of those he really directs and controls.

This construction seems to us to be sustained by the cases decided, although the precise point was not raised. In the Margrat Case, 51 Ohio St. 130, 37 N. E. 11, a brakeman was injured by the negligence of the engineer of another train. It is true it is not stated there was a conductor on that train. Probably there was not. The court apparently gave no consideration to the question whether there was or was not. It did not consider whether the engineer was or was not in charge of the train. It did consider and determine that the train was a separate branch or department, and then took up the question whether the engineer had charge or control of any employé in such separate branch or department. It was conceded the engineer had charge of the engine and of the fireman thereon, and the court held this was sufficient. It was not necessary that he should have control of more than one employé. To have control of "any co-employé whatever" (page 144, 51 Ohio St., page 11, 37 N. E.) was enough. Respecting the relation of superior and subordinate, created by the statute, the court says (page 144, 51 Ohio St., page 14, 37 N. E.):

"But the statute, we think, declares that relation to exist, as a matter of law for the purpose of charging the company, if the engineer was the superior of—that is, was authorized to command or direct—any co-employé whatever, and Margrat was without such authority."

And the syllabus, which is authoritative in Ohio, holds:

"1. An engineer, in charge of a locomotive on one train of cars of a railroad company, is in a branch or department of its service separate from that of a brakeman on another train of the same company, within the meaning of the terms 'separate branch or department,' as those terms are employed in section 3, of the act of April 2, 1890 (87 Ohio Laws, p. 150.)

"2. An engineer in charge of a locomotive, who has authority to direct or control a fireman serving on the same locomotive is a 'superior,' within the meaning of the above-named section."

According to the court below, what the Supreme Court held in this case was that an engineer, who, in the absence of a conductor, is in charge of a train of cars, whether consisting of an engine running light, or an engine and cars, is a "superior," within the meaning of the act. If the court meant this, why not say so? The syllabus does not describe the engineer as being in charge of the train, but of the locomotive, with authority to direct or control the fireman serving thereon.

This makes him a superior. Obviously, the court had in mind not the control of the train, but only of the fireman. It was not the control of a department, but of some employé therein, which was determinative. Just as, under the old Ohio rule, an employé in charge of another was held to be his superior, for whose negligence the company was responsible, regardless of whether or not he was in charge of a department or otherwise a vice principal.

In the case of L. S. & M. S. Ry. v. Pero, 22 Ohio Cir. Ct. R. 130, the plaintiff's intestate was a switchman at work in the Toledo yards of the railroad company. He was run down and killed by a yard engine, carrying both an engineer and conductor. It was charged that both the conductor and the engineer were negligent in failing to give proper signals. Suit was brought under this act. It was conceded that Pero was a subordinate, and it was claimed that the engineer and conductor were superiors, within the meaning of the statute. The question of negligence was submitted to the jury, and there was a verdict and judgment against the railway company. The Circuit Court affirmed the judgment in an opinion delivered by Judge Haynes. In this opinion, after discussing the evidence tending to show that Pero was in a separate department, the court says that for any negligence of the conductor the company would be liable, and for any negligence of the engineer on the engine the company would be liable. "We think the facts tend to show very strongly that there was negligence, both on the part of the conductor and of the engineer. At any rate this was the question that was submitted to the jury." Page 134. This case was carried to the Supreme Court, and the judgment affirmed. Railway Co. v. Pero, 65 Ohio St. 608, 63 N. E. 1132. But it is said that, since the jury could have based their verdict on the negligence of the conductor, we are at liberty to say the Supreme Court affirmed it for that reason. With this we disagree. The rule is quite different. If the jury under the instructions might have based its verdict upon the negligence of the engineer, then, before affirming the judgment, it was necessary to hold that the company was liable for the negligence of the engineer. Such was the holding in Railroad Co. v. Keary, 3 Ohio St. 202, where Judge Ranney, speaking for the court, and referring to the Stevens Case, 20 Ohio, 416, said (page 204):

"In that case, as in this, it was left in doubt whether the negligence complained of, and upon which the jury found their verdict, was that of the superintendent or conductor. In this case as in that, it is necessary to find the company liable for the negligence or carelessness of both the superintendent and conductor, before the judgment can be affirmed, as the instruction covered both, and it cannot now be told upon which the carelessness and negligence was fixed by the evidence."

We are satisfied, from the action of the Supreme Court of Ohio in these two cases, that it would construe the statute as we do, not as requiring an employé to be in charge or control of a separate branch or department, and of all the employés therein, in order to constitute a constructive "superior" within the meaning of the statute, but only to be in charge or control of another employé, or as the court put it, "any co-employé whatever," in such branch or department. This construction, we think, not only simplifies the act and contributes to its co-

herence, but will facilitate its proper enforcement by making plain its requirements. It is much easier to prove that an employé is in control of another employé, than that he is in control of all the employés in a particular branch or department, for it is not necessary to place a branch or department in control of a single employé. Take the case of a train. The control of the employés thereon might by rule be readily distributed among several employés, so that, while each might have control of one or more, neither would have control of all, and so the train could be put in the singular situation of having several actual but no constructive superiors aboard.

2. Kane was hurt while cleaning his locomotive. It was then about half past 6 o'clock in the morning. He had gone on duty at 6. The locomotive was backing slowly, drawing after it 10 or 12 cars; that next the engine being a gondola. The engineer stated that the train was "just merely going," it had "just about come to a stop." A witness for the defense estimated its speed at about three miles an hour. When the collision occurred, Kane was standing on the front part of the engine, wiping the number plate or the headlight with a piece of waste, which he held in his left hand. The engine had no pilot, but what is called a bunting beam, having underneath a footboard, and on top a hand rail. There was also a hand rail running around the boiler from the cab on one side to the cab on the other, high enough above the running board to afford a good hold. The evidence was conflicting as to precisely where Kane was standing when the collision occurred. Baldwin, a witness for the defendant, put him on the bunting beam directly in front of the boiler, and says he was wiping the headlight. Rhiel, a witness for the plaintiff, says he was standing on one end of the bunting beam, holding to the hand rail along the boiler with his right hand, while his left was wiping either the end of the boiler or the headlight; he was facing the engine. Other witnesses testified that he could not stand directly in front of the headlight without standing on the round hand rail above the bunting beam; that the natural place for him to stand was to one side, holding to the hand rail along the boiler. Bowker's train was running at a speed of about 10 miles an hour when it struck the tender of the engine on which Kane was working. The tender and engine was forced back, and the body of the gondola was torn from the draft timbers and shot up against the front of the engine, breaking the number plate and headlight. In some way Kane was thrown off or caught. He was found dead lying on the draft timbers of the gondola, crossways of the track. A bolt had apparently been driven through his back.

On the first trial, the following rule respecting firemen was in evidence:

"They must report for duty at the appointed times; attend to the fires of the locomotive when on the road, and to taking water and oiling the machinery; assist engineman in watching for signals and obstructions, clean and polish their locomotives at the end of each trip, and assist in making repairs when necessary."

The reversal of the judgment on the first trial, and the holding that the record showed a case of contributory negligence, was based not simply on the fact that the evidence showed that Kane was in a danger-

ous place, but was there in violation of the above rule in two respects: He was cleaning the locomotive, not at the end of the trip, but while it was in motion, and he was not assisting the engineer in watching for signals and obstructions, a thing he ought to have been doing. The court held that he was guilty of contributory negligence in being in a dangerous place in violation of a rule of the company; that, if he had been at his post of duty, in the cab of the engine, watching for signals and obstructions, the collision would not have caught him.

The court below could see no substantial difference in the case presented on the last trial from that on the first, and therefore naturally felt bound by the former ruling. But we find a material difference resulting from the elimination of the rule. On the last trial, there was evidence to justify a finding that the rule in question, so far as it required the locomotive to be cleaned only at the end of each trip, had been abrogated in accordance with the doctrine of Railway Co. v. Craig, 73 Fed. 642, 19 C. C. A. 631; Id., 80 Fed. 488, 25 C. C. A. 585. The evidence was overwhelming to the effect that the firemen of this company at the time of the accident worked from 6 in the morning to 6 at night, and always cleaned their engines during the day, sometimes while they were standing still and sometimes while in motion; and that this custom was known to and sanctioned by the company. In cleaning his engine at the time he did, Kane was therefore only doing his work under the modified rule. Being in the discharge of his duty, he was where he had a right to be, and was not violating the rule requiring him to look out for signals and obstructions. That part of the rule had no more application to him when at work cleaning the engine than when at work shoveling coal into the firebox. Besides, it may be said in this connection there was testimony tending to show that Kane was standing on the end of the bunting beam facing the cab window, through which he had a view of the track ahead and could thus assist the engineer in watching for signals and obstructions. Moreover, the collision did not result from any failure to watch for or observe either a signal or an obstruction. It resulted from the sudden and unexpected negligence of Bowker—a thing which could neither have been foreseen nor prevented.

With the rule out of the way, the Jones Case, 95 U. S. 439, 24 L. Ed. 506, and Kresanowski Case (C. C.) 18 Fed. 229, cease to apply. In those cases the injured persons seated themselves on the pilots of the engines which were running head on—an extremely dangerous place under the circumstances. And they did this without reasonable cause or excuse. When Kane went out on the running board to clean the engine, it had almost stopped. He was in no more danger than he would have been on the rear of the tender if the gondola had been coupled to it, or than a brakeman, standing on the front end of the gondola, would have been. Any place where there is a coupling is dangerous in case of a collision, but how dangerous, and whether a fireman or brakeman of ordinary prudence should and would avoid such a place while his train was moving slowly and just about to stop, is, we think, a question for the jury under all the circumstances of the particular case. With the rule practically out of the way, it seems

142 F.—44

to us, in view of the conflict of evidence, that the question whether Kane was or was not guilty of negligence in being where he was, and doing what he did, should have been submitted to the jury under proper instructions. It was peculiarly a question for such a body to pass on.

If it be said that, in our first opinion, we stated that, irrespective of the rule, Kane was in a dangerous position, and therefore was negligent, it will be seen, upon a careful reading, that we held the Jones and Kresanowski cases applicable, because Kane had no reasonable occasion for being where he was. We said (118 Fed. 223, 55 C. C. A. 138):

"It would seem it was negligence for the defendant to be where he was, because of the great danger of that position, and the absence of reasonable occasion for his being there."

And on page 139, 55 C. C. A., page 232, 118 Fed.:

"But, as we have seen, the work was not required or even authorized, and his being there was therefore entirely without reasonable occasion for it."

But, under the modified rule, the work of cleaning the engine was authorized, and there was therefore reasonable occasion for his being where he was. It does not seem to us just that the railroad company, while it sanctions the practice of its firemen in cleaning their engines under such circumstances as existed here, should be permitted to say it was necessarily dangerous, and that a fireman in pursuing that practice is, as matter of law, guilty of contributory negligence.

The judgment is reversed, and the case remanded, for further proceedings not inconsistent with this opinion.